IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NOS. 24-1707 / 24-1751

BARBARA MERCER,

Petitioner-Appellee / Cross-Appellant.

v.

ANTHONY STEWART,

Respondent-Appellant / Cross-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SECOND BRIEF: APPELLEE / CROSS-APPELLANT
BRIEF OF PETITIONER

---

David A. Koelzer
Federal Community Defender
Eastern District of Michigan – Flint
Attorney for Petitioner
111 E. Court St., Suite L-100
Flint, Michigan 48502
(810) 232-3600
david_koelzer@fd.org

Casey N. Swanson
Federal Community Defender
Eastern District of Michigan - Detroit
Attorney for Petitioner
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
(313) 967-5542
casey_swanson@fd.org

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................v

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................2

STATEMENT OF THE CASE...............................................................................3

SUMMARY OF ARGUMENT .............................................................................4

ARGUMENT .......................................................................................................6

    I.    DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED
ON INEFFECTIVE ASSISTANCE OF COUNSEL AS THE TO THE
CONVICTIONS AND SENTENCES RELATED TO BOTH VICTIMS.............6

    II.   DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED
ON PROSECUTORIAL MISCONDUCT AS TO THE CONVICTIONS AND
SENTENCINGS RELATED TO BOTH VICTIMS...........................................20

    III.  DISTRICT COURT CORRECTLY GRANTED HABEAS RELIEF AS TO
THE CONVICTION AND SENTENCE RELATED TO VICTIM THOMAS. .24

    IV.  DISTRICT COURT ERRED IN DENYING HABEAS RELIEF IN THE
FORM OF A NEW SENTENCING RELATED TO VICTIM HANNAH, IN
VIEW OF THE COURT'S HOLDING OVERTURNING THE CONVICTION
AND SENTENCE RELATED TO VICTIM THOMAS. ...................................39

CONCLUSION..................................................................................................58

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............59

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION .....60

CERTIFICATE OF SERVICE ...........................................................................61

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Butler*, 858 F.2d 16 (1st Cir.1988)......................................................12

*Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000) ........................................................................................................ 32, 33

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........................................................42

*Brumfield v. Cain*, 576 U.S. 305 (2015) ..............................................................39

*Bryan v. Brandon*, 228 Fed. Appx. 578 (6th Cir. 2007) ...........................................58

*California v. Trombetta*, 467 U.S. 479 (1984) ..................................... 26, 33, 36

*Chambers v. Mississippi,* 410 U.S. 284 (1973)......................................................36

*Chandler v. Brown*, 126 F.4th 1178 (6th Cir. 2025)...............................................26

*Darden v Wainwright,* 477 U.S. 168 (1986)...................................... 21, 24, 25

*Davis v. Lambert*, 388 F.3d 1052 (7th Cir. 2004) ....................................................7

*Dean v. United States*, 581 U.S. 62 (2017)............................................................50

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) .............................. 21, 23, 24, 36

*English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010)......................... 6, 9, 11, 12

*Ewing v Horton*, 914 F.3d 1027 (6th Cir. 2019)....................................................46

*Gilmore v. Taylor*, 508 U.S. 333 (1993)................................................................37

*Greenlaw v. United States*, 554 U.S. 237 (2008).....................................................50

*Harris v. Nelson*, 394 U.S. 286 (1969) .......................................................... 46, 55

*Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990)..........................................................7

*Hilton v. Braunskill,* 481 U.S. 770 (1987)..................................................... 45, 46

*Horton v. Warden, Trumbull Corr. Inst.*, 498 Fed. Appx. 515 (6th Cir. 2012) 26

*Keahey v. Marquis*, 978 F.3d 474 (6th Cir. 2020)....................................................36

*Kimmelman v. Morrison,* 477 U.S. 365 (1986) ......................................................10

*Madison v. Alabama*, 586 U.S. 265 (2019) ...........................................................33

*Mathews v. United States*, 485 U.S. 58 (1988)............................................ 26, 33, 36

*Miles v. Jordan*, 988 F.3d 916 (6th Cir. 2021) ......................................................34

*Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001)................................. 51, 52, 53

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ................................. 59, 60

*Morrell v. Wardens*, 12 F.4th 626 (6th Cir. 2021) ........................................ passim

*Neal v. Booker*, 497 Fed. Appx. 445 (6th Cir. 2012), *cert. denied*, 568 U.S. 1147 (2013) ...................................................................................... 28, 29, 32

*People v Brown*, 339 Mich.App. 411 (2021) .........................................................49

*People v Tanner*, 387 Mich 683 (1972)................................................................11

*People v. Dittis,* 157 Mich. App. 38 (1987).............................................................8

*People v. Francisco*, 474 Mich. 82 (2006) ........................................................ 59, 60

*People v. Gimotty*, 216 Mich. App. 254 (1996) ..................................................... 7, 8

*People v. Ginther*, 390 Mich. 436 (1973) ............................................................... 28

*People v. Johnson*, 116 Mich. App. 452 (1982) ..................................................... 28

*People v. Lemons*, 454 Mich. 234 (1997) ................................................................. 7

*People v. Lockridge*, 498 Mich. 358 (2015) ........................................................... 59

*People v. Mercer*, No. 312007, 2014 WL 4262998, at *14 (Mich. Ct. App. Aug. 28, 2014) ............................................................................................. passim

*Ray v. Bauman,* 326 F. Supp. 3d 445 (E.D. Mich 2018) ......................................... 34

*Rice v. White*, 660 F.3d 242 (6th Cir. 2011) ...................................................... 34, 37

*Rock v. Arkansas,* 483 U.S. 44 (1987) .................................................................. 36

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................... 6, 36

*Taylor v. Withrow*, 288 F.3d 846 (6th Cir. 2002), *cert. denied,* 537 U.S. 1007 (2002) ......................................................................................................... 26, 27

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir.2003) ............... 12

*United States v Lavoie,* 19 F.3d 1102 (6th Cir. 1994) ............................................. 60

*United States v Pasquarille*, 130 F3d 1220 (6th Cir. 1997) ................................... 51

*United States v. Ajan*, 731 F.3d 629 (6th Cir. 2013) .............................................. 51

*United States v. Carter*, 236 F.3d 777 (6th Cir. 2001) ........................................... 21

*United States v. Montgomery*, 998 F.3d 693 (6th Cir. 2021) ................................... 58

*United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991) ....................................... 22

*United States v. Tucker*, 404 U.S. 443 (1972) .................................................. 57, 62

*Wofford v. Woods*, 969 F.3d 685 (6th Cir. 2020) ................................................... 39

## STATUTES

18 U.S.C. § 3553(a) ................................................................................................. 46

18 U.S.C. § 924(c) ................................................................................................... 46

28 U.S.C. § 2254(e)(1) ............................................................................................ 36

28 U.S.C. § 2243 ............................................................................................. passim

Mich. Comp. Laws § 750.321 .................................................................................. 11

Mich. Comp. Laws § 777.39 .................................................................................... 44

Mich. Comp. Laws § 777.61 .............................................................................. 43, 55

Mich. Comp. Laws § 777.62 .................................................................................... 43

Mich. Comp. Laws § 780.972 .................................................................................. 25

## OTHER AUTHORITIES

Michigan Criminal Jury Instruction 16.8 ................................................................ 13

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

This case involves a habeas corpus petition from two second-degree murder convictions and sentences of life imprisonment. The district court overturned one conviction and sentence, but denied all relief as to the other conviction and sentence.

It is Petitioner's position in response to Respondent's appeal (No. 24-1707) that the district court correctly granted relief as to the first conviction and sentence. In Petitioner's appeal (No. 24-1751), it is her position that the district court should have granted relief as to both convictions and sentences based on several arguments; or, at least, the district court should have provided meaningful relief by granting a new sentence as to the second conviction.

Based on these important and complex issues, the Court should grant oral argument.

## **JURISDICTIONAL STATEMENT**

Petitioner is satisfied with the jurisdictional statement provided by

Respondent.  See First Brief, p. 1.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

I.    DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL AS TO THE CONVICTIONS AND SENTENCES RELATED TO BOTH VICTIMS.

II.   DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED ON PROSECUTORIAL MISCONDUCT AS TO THE CONVICTIONS AND SENTENCES RELATED TO BOTH VICTIMS.

III.  DISTRICT COURT CORRECTLY GRANTED HABEAS RELIEF AS TO THE CONVICTION AND SENTENCE RELATED TO VICTIM THOMAS.

IV.   DISTRICT COURT ERRED IN DENYING HABEAS RELEIF IN THE FORM OF A NEW SENTENCING RELATED TO VICTIM HANNAH, IN VIEW OF THE COURT'S HOLDING OVERTURNING THE CONVICTION AND SENTENCE RELATED TO VICTIM THOMAS.

2

## STATEMENT OF THE CASE

To the extent that Respondent's "Statement of the Case" sticks to "the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review," (Fed. R. App. P. 28(a)(6)), Petitioner is satisfied.  (App. Doc. 36, First Brief, pp. 5-20).  Petitioner will include additional facts where necessary in the Argument section, *infra.*

### SUMMARY OF ARGUMENT

This state habeas case arises out of a double murder near Jackson, Michigan in 2012. Barbara Mercer (Petitioner) was charged only as an aider and abettor, and her boyfriend, Richard Janish, was charged as the principal; the record is clear that Janish shot and killed both victims (Thomas and Hannah). The jury acquitted both defendants of first-degree murder. But the jury illogically convicted Mercer of two counts of second-degree murder, while convicting Janish of one count of second-degree murder (as to Thomas) and one count of voluntary manslaughter (as to Hannah, based on self-defense).

After exhausting state court appeals, Petitioner filed a § 2254 Petition for Writ of Habeas Corpus. The federal district court granted Petitioner a new trial as to the Thomas murder, but it denied all relief as to the Hannah murder, including Petitioner's requested remedy of a new sentencing as to the Hannah murder.

Under AEDPA, 28 U.S.C. § 2254(d)(1), Petitioner submits that the Michigan Court of Appeals unreasonably applied clearly established law as determined by the United States Supreme Court, based on both ineffective assistance of counsel and prosecutorial misconduct. In addition, under AEDPA, 28 U.S.C. § 2254(d)(2) , the district court properly found that the Michigan Court of Appeals violated Petitioner's right to present a complete defense by basing its decision on an unreasonable determination of the facts. But the district court abused its discretion by failing to

4

grant meaningful relief (at least conditional relief) in the form of a new sentencing as to the Hannah murder.

Therefore, despite the deference generally provided to state courts under AEDPA, this Court should grant full relief to Petitioner.

## ARGUMENT

**I.    DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL AS TO THE CONVICTIONS AND SENTENCES RELATED TO BOTH VICTIMS.**

### Standard of Review

In an appeal from a habeas case under 28 U.S.C. § 2254(d) alleging ineffective assistance of counsel, a district court's legal conclusions, including whether to grant or deny relief, are reviewed *de novo*, although a state court's decision on the merits is subject to deference. *English v. Romanowski*, 602 F.3d 714, 725 (6th Cir. 2010).

### Argument

The district court erred when it declined to grant Mercer relief on the basis of ineffective assistance of counsel. The district court found the Michigan Court of Appeals reasonably concluded that Mercer failed to show that her trial counsel's decision to rely on a legally unavailable defense prejudiced her. (R. 36, Opinion and Order, PageID. 2168.)  Petitioner submits that, as explained below, the prejudice is evident on this record.

"The Sixth Amendment requires that all criminal defendants receive reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). To demonstrate ineffective assistance of counsel, Petitioner must show that counsel's performance fell below an objective standard of reasonableness and that counsel's errors affected the outcome of the proceeding. *Id.* at 688, 696.

6

Strategic decisions are not sufficient to demonstrate ineffective assistance of counsel. *Id.* at 689. However, "[j]ust as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer." *Davis v. Lambert*, 388 F.3d 1052, 1064 (7th Cir. 2004) (quoting *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990)).

It is well established that in Michigan, duress is not a defense to homicide. *People v. Gimotty*, 216 Mich. App. 254, 257; 549 N.W.2d 39 (1996). Michigan does recognize the defense of duress in certain cases, where a crime is committed to prevent or avoid some greater harm. *People v. Lemons*, 454 Mich. 234; 562 N.W.2d 447 (1997). "To establish a duress defense, defendants must show, among other elements, that they faced threatening conduct of sufficient magnitude to create fear of death or serious injury in the minds of reasonable persons." *Gimotty*, 549 N.W.2d at 41.

However, as Michigan courts have explained, where the crime committed is a homicide offense, the harm caused by that crime – taking the life of a third person – cannot be excused by the defense of duress as a matter of law. "The rationale underlying the common law rule is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead."

7

*People v. Dittis*, 157 Mich. App. 38, 41; 403 N.W.2d 94 (1987) (duress not a defense to homicide).

In this case, Mercer's trial counsel first told jurors during voir dire that he anticipated a duress defense. (R. 7-6, Trial Tr. 6/11/12, PageID. 539.) Then he promised the jury during opening statement that they would hear evidence in support of duress. (R. 7-7, Trial Tr. 6/12/12, PageID. 758.) Trial counsel learned from the prosecutor and the trial judge shortly after concluding his opening that duress was unavailable as a matter of law as a defense in homicide cases. Despite being instructed on the duress defense in the preliminary jury instructions, the jury was not going to be instructed on duress in the final jury instructions. (R. 7-7, Trial Tr. 6/12/12, PageID. 760-61.) Trial counsel made no request to address the jury again to fix his error. Counsel also made no direct mention of the defense during his closing argument. Worse, he made no mention of defense of others. In effect, there was *no defense* presented to the jury on behalf of Petitioner as to Thomas.

In *English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010), the Sixth Circuit found that the defendant was deprived his right to effective assistance of counsel where, during the opening statements, his counsel made a promise to the jury and failed to deliver. Specifically, counsel told the jury they would hear testimony from a witness who would corroborate the defendant's theory of defense. At some point

8

during the trial, counsel talked to the witness and decided that he would not call the witness to the stand. *English*, 602 F.3d at 727.  The Sixth Circuit explained that the decision not to call a potential defense witness can certainly be a reasonable one in some circumstances. However, in *English*, the Sixth Circuit held that it was a decision counsel should have made before he made promises about her testimony during his opening statement. As the Court explained:

> To the extent that counsel was in fact concerned about the aforementioned problems with [the witness's] putative testimony, he could have and should have discovered those problems before trial and then evaluated them before he decided whether or not to call (or even promise) the witness at trial.
>
> *        *        *
>
> By failing to make these simple investigations before trial, counsel violated his duty to investigate and was thus objectively unreasonable in his performance.

*English*, 602 F.3d at 728-29.

Petitioner's counsel's deficient performance here was even more egregious than the trial counsel's performance in *English*.  Here, a simple Westlaw or even Google search prior to trial would have revealed to Mercer's counsel that duress was not a defense applicable to homicide offenses. Unlike most complicated strategic decisions, such as the witness credibility issue in *English*, Mercer's counsel was wrong about well-established law.  *Strickland's* general

9

presumption of reasonableness simply does not apply when it comes to a damaging mistake of black-letter law. *See Kimmelman v. Morrison,* 477 U.S. 365, 385 (1986).

Mercer's attorney relied on the inapplicable defense of duress during opening statement and was forced to abandon it. Because a basic understanding of Michigan law — and the defenses available in homicide cases — would have prevented counsel from leaving the jury with a promise unfulfilled, his performance was deficient and prejudicial under *Strickland*. Here, where Petitioner was at worst an aider and abettor, the judge gave an elaborate duress instruction that was later retracted. The prosecutor understandably highlighted this in closing argument; thus, the prejudice from such a critical, unfulfilled promise is evident. *See English*, 662 F.3d at 729-30 (addressing and finding prejudice in case of unfulfilled promises). The damage began during the opening statement when counsel relied on an inapplicable defense; it was cemented when that defense was essentially abandoned, resulting in a total loss of credibility with the jury.

The prejudice caused by counsel's reliance on the duress defense does not lie only in the jury's inability to apply the duress defense during their deliberations. Rather, it lies in the fact that counsel lost all credibility with the jury when he relied on a defense in his opening that was inapplicable to the case in the first place. In the end, trial counsel did argue what amounts to a legitimate defense:

10

the defendants did not intend to kill anyone, but only intended to scare them. In theory, this defense could have resulted in a conviction of the lesser offense of manslaughter.[1]  But instead, trial counsel relied on an inapplicable defense during his opening, and thus had no chance with the jury by the time he attempted to pivot to a legitimate defense.

This type of ineffective assistance claim is often pursued when defense attorneys promise specific testimony, and fail to deliver. Consider *English, supra*.  In that case, trial counsel promised the jurors that they would hear specific testimony from a witness whom counsel later decided not to call to the stand at all due to credibility problems. *English*, 602 F.3d at 719. This Court held: "[I]t was objectively unreasonable for English's trial attorney to decide before trial to call Ceruti as a witness, make that promise to the jury, and then later abandon that strategy, all without having fully investigated Ceruti and her story prior to opening statements." *Id*. at 728.  The *English* court explained its rationale as follows:

> The unfulfilled promise created a negative inference against English generally. As the First Circuit has noted, "little is more damaging than to fail to produce important evidence that had been promised in an

---

[1] In fact, the codefendant, Richard Janish, was convicted of manslaughter as it relates to Anthony Hannah.  If Mercer had been convicted of only manslaughter (as to both victims) and received the maximum sentence of 10 to 15 years, she could be close to freedom today.  *See* Mich. Comp. Laws § 750.321 (under Michigan law, manslaughter carries a maximum of 15 years imprisonment) and *People v Tanner*, 387 Mich 683, 690, 199 N.W.2d 202 (1972) (under Michigan law, the minimum sentence must be no greater than two-thirds of the maximum sentence).

> opening." *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir.1988). The jury in this case must have wondered what happened to Ceruti after she was promised as a corroborating witness for English's story, and *the jury may well have counted this unfulfilled promise against English and his attorney. See United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 259 (7th Cir.2003) (finding unfulfilled promise by defense counsel in opening caused prejudicial negative inference as to defendant and defense counsel's credibility).

*Id*. at 729 (emphasis added).

The Sixth Circuit in *English* relied on *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 259 (7th Cir. 2003) (*Hampton*), in granting relief based on ineffective assistance of counsel. In *Hampton,* the Seventh Circuit found that counsel was ineffective in a case where during the opening statement, he told the jury they would hear evidence that the defendant was not a member of a gang. The attorney never followed through. *Id*. at 236. The court explained:

> [I]t was unreasonable for [trial counsel] not to follow through by eliciting testimony on this point. *His failure to do so could only have undercut the credibility of the defense with the jury.*
>
> The Illinois Appellate Court's determination that it was reasonable for [trial counsel] to make and then break these promises as a matter of evolving trial strategy was unreasonable. Making such promises and then abandoning them for reasons that were apparent at the time the promises were made cannot be described as legitimate trial strategy. Promising a particular type of testimony creates an expectation in the minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the

12

> testimony would have been adverse to his client and may also question the attorney's credibility. In no sense does it serve the defendant's interests.

*Id.* at 259 (emphasis added).

The same type of damage was done in this case when Mercer's trial counsel promised the defense of duress and then failed to deliver. Consider what trial counsel's opening statement would have sounded like if the "we only intended to scare them" defense was his exclusive plan all along. He could have tailored his presentation of the case to Michigan's model criminal jury instruction for manslaughter as an alternative to innocence. See Michigan Criminal Jury Instruction 16.8 (including state of mind option described as "[she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [her] actions."). Counsel could have explained to the jury that at worst, Mercer was guilty of manslaughter because Janish never intended to kill anyone, as she and Janish were only trying to scare the victims.

However, that is not at all what happened. The case began with the jury being instructed on the defense of duress, immediately before opening statements:

> Now, each of the defendants say that he or she is not guilty because someone else's threatening behavior made him or her act as he or she did. This is called [t]he defense of duress. The defendants are not guilty if he or she committed the crime under duress. Under the law there was duress if five things were true: One, the threatening behavior would have made a reasonable person fear death or serious bodily harm. two, the

13

defendants actually were afraid of death or serious bodily harm. Three, the defendants had this fear at the time he or she acted. Four, the defendants committed the act to avoid the threatened harm. Five, the situation did not arise because of the defendants fault or negligence. Now, in deciding whether duress made the defendants act as he or she did think carefully about all the circumstances as shown by the evidence. Think about the nature of any force or threats, think about the background and character of the person who made the threats or used the force. Think about the defendant's situation when he or she committed the alleged act. Could he or she have avoided the harm he or she feared in some other way than by committing the act? Think about how reasonable these other means would have seemed to a person in the defendant's situation at the time of the alleged act.

(R. 7-7, Trial Tr. 6/12/12, PageID.716-17.) Counsel tailored his voir dire and opening statement to this inapplicable instruction. He even framed the prosecutor's burden around the bogus defense: "[Y]ou put me in fear of harm and great bodily harm . . . [T]he prosecutor has to prove beyond a reasonable doubt that there was no duress. How he's going to do that is beyond me." *Id.* at PageID.758.

Later that day, the Court was made aware of the legal error by trial counsel. The judge explained to the attorneys, "I'm going to have [the duress instruction] pulled out of each one of their [jury instruction] books at this time and we'll address it, change it and modify it for the final instructions." *Id.* at PageID.761.

By the time of his closing argument, trial counsel attempted to rely on a completely different defense – that they only intended to scare the victims.

14

"[I]f she were charged with conspiracy to scare, I would concede on that. Even in the worst case scenario if she was charged with conspiracy to take a gun and act like, you know, get the hell out of here or we're going to do something bad to you, I'd say guilty. But conspiracy means she had to specifically intend that they were going to commit murder in the first degree. And there is no alternative." (R.. 7-10, Trial Tr. 6/15/12, PageID.1355.)  In referencing Mercer's thoughts about Janish after the killing, counsel stated, "He was never supposed to kill. That's not the plan." *Id.* at PageID.1356.

The judge continued with his instructions after closing arguments, explaining to the jury why the duress defense was abandoned:

> Now at the . . . beginning of this trial I gave you a preliminary instruction about the defense of duress. I now inform you and instruct you that instruction was inapplicable in the context of this case.  You are not to consider duress in your deliberations in any form.

*Id*. at PageID.1385.[2]

By the time the jury began deliberations, Mercer's trial counsel could not have had any credibility left with the jury. During closing arguments, counsel abandoned what had been explained as the applicable defense by the judge, the

---

[2] During the final instructions, the judge did give the standard instruction that the jurors should follow what the judge says about the law. (R. 7-10, Trial Tr. 6/15/12, PageID.1384.) Petitioner submits that this instruction did next-to-nothing to alleviate the prejudice that had already been done.

15

prosecutor, and the defense lawyer.  This is a classic case of ineffective assistance of counsel caused by broken promises made during an opening statement. As illustrated by *English* and *Hampton* above, and the instant case, this type of underperformance by counsel causes severe prejudice.

The prejudice caused by this issue is particularly devastating – for Mercer, it may have been the difference between 10 years or life in prison. Had counsel credibly put forth only the "we only intended to scare them" defense from the beginning, Mercer easily could have been convicted of only manslaughter as to both victims. Her far more culpable codefendant got one manslaughter conviction; certainly Mercer could have gotten two.  She was entitled to, but deprived of, the effective assistance of counsel under the Sixth Amendment and should be granted habeas relief.

The district court found that the Michigan Court of Appeals decision to reject this claim was not unreasonable. (R. 36, Opinion and Order, PageID. 2168.). The district court got this wrong for the same reason the Michigan Court of Appeals did. In its opinion, the Michigan Court of Appeals acknowledged the presence of the themes of duress throughout the trial. It correctly stated that even during closing, "counsel repeated the theme, claiming that the victims were dangerous drug dealers who posed a real threat." *People v. Mercer*, No. 312007, 2014 WL 4262998, at *14 (Mich. Ct. App. Aug. 28, 2014). This was a continued commitment

16

on counsel's part to the unavailable duress defense. And this is the point that was lost on the Michigan Court of Appeals and the district court.

The Michigan Court of Appeals characterized the presence of these themes in closing as if counsel used them in a successful effort to shift gears and rely on an acceptable defense involving an intent to scare the victims. However, counsel was continuing to commit to the inapplicable defense of duress when he continued to push the idea that his client was pressured by dangerous drug dealers. Although counsel referenced the notion that the defendants were conspiring to scare the victims, counsel's continued emphasis on dangerous victims is completely inconsistent with the legitimate conspiracy to scare defense. The duress defense, alluring as it may have been to trial counsel, was legally unavailable and he needed to abandon it. And despite paying lip service to the fact that the defense was unavailable, counsel did not abandon it – even after the jury was instructed to do so. The decisions below fail to recognize the gravity of this. The jury was left with a closing argument that did not make sense, relied on themes related to a nonexistent defense, and left them with no legal or logical path to acquit Mercer of the murder charges.

The Michigan Court of Appeals – in an analysis embraced by the district court – unreasonably connected the theme of dangerous victims to a completely

17

irreconcilable idea: that the defendants lured the victims to their house with the intent to simply scare them. The Michigan Court of Appeals concluded:

> Considering that duress was only briefly mentioned at the start of the trial, and considering that counsel advanced an alternate theory during trial, we conclude that defendant has failed to show that, but for the duress instruction, the result of the proceeding would have been different.

(R. 36, Opinion and Order, PageID. 2168-69.) (citing *People v. Mercer*, No. 312007, 2014 WL 4262998 (Mich. Ct. App. Aug. 28, 2014).

Counsel did not advance a coherent "alternate theory." He persisted in the duress defense even after the rug was pulled out from under him (which was done rightfully so, since duress is an inapplicable defense). Counsel needed to pivot to a different, plausible theory that was consistent with the facts. There needed to a be a clean break from the legally inapplicable defense, but it never happened. This prejudiced Mercer by leaving the jury with a confusing and inapplicable defense that provided no pathway to acquitting her of murder. The way the Michigan Court of Appeals conflated these defenses to make it seem like counsel salvaged an acceptable defense for Mercer (and, therefore, did not cause her prejudice) was unreasonable. The district court's terse approval of this analysis was wrong.

The district court focused almost exclusively on the credibility issue counsel caused for himself by relying on an unavailable defense. It noted the prosecutor's decision to share the blame for trial counsel's mistake in front of the jury. The court

18

emphasized this in its finding that the Michigan Court of Appeals' decision to reject

Mercer's ineffective assistance of counsel claim was not unreasonable. Specifically,

the district court found:

> Given the prosecutor's effort to spread the blame for the mistaken invocation of the duress defense, it would not have been unreasonable for the Michigan Court of Appeals to have concluded that (1) Mercer's counsel did not suffer any unique loss of credibility from the mistaken references to the duress defense, (2) any loss of credibility would have been suffered equally by all of the lawyers and the state trial court, and (3) Mercer therefore did not suffer prejudice as a result of her counsel's mistaken invocation of the duress defense.

(R. 36, Opinion and Order, PageID. 2170.)

While the credibility of trial counsel is certainly a relevant issue as it relates

to the prejudice prong of the *Strickland* analysis, both courts missed the mark here.

Counsel's credibility aside, both decisions failed to recognize the way counsel

continued to mangle Mercer's defense by relying on the essence of duress all the

way through closing. This left the jury – and Mercer – with no legitimate path to

acquittal of the two murder charges. The district court erred when it held that the

Michigan Court of Appeals reasonably denied relief.

19

**II. DISTRICT COURT ERRED IN DENYING HABEAS RELIEF BASED ON PROSECUTORIAL MISCONDUCT AS TO THE CONVICTIONS AND SENTENCES RELATED TO BOTH VICTIMS.**

## Standard of Review

In an appeal from a habeas case under 28 U.S.C. § 2254(d) alleging prosecutorial misconduct, a district court's legal conclusions, including whether to grant or deny relief, are reviewed *de novo* although a state court's decision on the merits is subject to deference. *Stermer v Warren*, 959 F.3d 704, 720-21 (6th Cir. 2020).

## Argument

A prosecutor's mistake of law, if uncorrected, can violate a defendant's federal constitutional right to due process when it "infect[s] the trial with unfairness" by "distract[ing] the trier of fact and thus rais[ing] doubts as to the fairness of the trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v Wainwright,* 477 U.S. 168 (1986). *See United States v. Carter*, 236 F.3d 777, 785-86 (6th Cir. 2001) ("This court has consistently recognized that a prosecutor's misrepresentation of material evidence can have a significant impact on jury deliberations because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty."); *United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) ("Because the jury will

20

normally place great confidence in the faithful execution of the obligation of a prosecuting attorney, improper instructions or suggestions are apt to carry more weight against a defendant than such statements by witnesses.").

In this case, the prosecutor stated during his rebuttal argument:

> You know, there are rules of law that talk about admissibility of evidence and you've all heard about hearsay. You may not know what it exactly means but you've heard the phrase before and there's a number of exceptions to the hearsay rule. But you know what the exceptions are all based on? *They're based on the concept that if a defendant says something that hurts him it's inherently believable and therefore it's admissible as evidence. If they say something that favors them it's inherently unbelievable and it's -- and it's barred by hearsay.* Okay.

He explained how this reasoning could be used by the jury to discredit the defense:

> [By the prosecutor]: Which part can you accept because it's inherently believable? There was an agreement. Which part can you reject because it's inherently unbelievable? We didn't really want to hurt them. We just wanted to scare them. It's inherently unbelievable.
>
> *          *          *
>
> Mr. Raduazo (counsel for Janish) tried to tell you that we don't know what the content of that phone call was. Baloney, we know exactly what it was because they both admitted it. *And that's one of those things that's inherently believable because you can use it against them.*

21

(R. 7-10, Trial Tr. 6/15/12, PageID 1362-67) (emphasis added).

The Michigan Court of Appeals found that the prosecutor "acted inappropriately" but refused to grant relief. (R. 36, Opinion and Order, PageID. 2173.)] (citing *People v. Mercer*, No. 312007, 2014 WL 4262998 (Mich. Ct. App. Aug. 28, 2014) But under *Donnelly, supra*, 416 U.S. at 643, these prosecutorial statements distracted the jury and affected the fairness of the trial. In a case so dependent upon the credibility of the defendants' admittedly self-serving statements, it is this type of prosecutorial misconduct that is particularly harmful. The prosecutor intentionally injected his erroneous and damaging view of the law, and hammered home its application to the facts of the case. Even the timing could not have been worse, since this poison was planted in the jurors' ears during rebuttal — when there was no opportunity for the defense to respond.

With that, the prosecutor stripped the jury of the last possible means it could have used to acquit Mercer. The jurors had already been told not to consider the previously promised defense of duress. They were never made aware of the defense of others. Now, moments before deliberation, they were instructed by the prosecutor to disregard the most important evidence at the heart of Mercer's botched defense — her and Janish's own statements. Since the jury was improperly instructed in extraordinarily significant ways, these prosecutorial remarks are

22

even more likely to have swayed the jury and "infected the trial with unfairness." *Donnelly, supra*, 416 U.S. at 643.

The district court in its own habeas opinion "strongly disapprove[d]" of the prosecutorial misconduct here. But it relied on the deferential standard of AEDPA to find that it did not rise to the level of a due process violation. (R. 36, Opinion and Order, PageID 2174-75.)

Petitioner respectfully submits that a prosecutor stating in a two defendant murder trial that both defendants' exculpatory statements are "inherently unbelievable" (at least three times, quoted above) is a quintessential due process violation under *Donnelly* and *Darden, supra.* To make matters worse, the prosecutor told the jurors that parts of the statements that were allegedly incriminating were "inherently believable." It is difficult to imagine more unfairly damaging statements by a prosecutor.

These are not some innocuous misstatements of law that can be corrected by a jury instruction. They went to the heart of the most important evidence in support of both defendants' defense and therefore "infect[ed] the trial with unfairness." *Darden,* 477 U.S. at 169.

"AEDPA deference" does not, and cannot, mean that anything goes, particularly when it comes to statements that the Michigan Court of Appeals and the district court here *both* found to be improper. This Court should grant Petitioner

23

a new trial, and in so doing send a strong message that such outrageous and damaging prosecutorial misconduct will not be tolerated under the cover of "AEDPA deference."

**III.   DISTRICT COURT CORRECTLY GRANTED HABEAS RELIEF AS TO THE CONVICTION AND SENTENCE RELATED TO VICTIM THOMAS.**

### Standard of Review

In an appeal from a habeas case under 28 U.S.C. § 2254(d) alleging deprivation of due process right to present a complete defense, a district court's legal conclusions, including whether to grant or deny relief, are reviewed *de novo*, although a state court's decision on the merits is subject to deference. *Chandler v. Brown*, 126 F.4th 1178, 1188-89 (6th Cir. 2025).

### Argument

The Due Process Clause of the Fourteenth Amendment "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citation omitted). A "necessary corollary" to the right to present a complete defense is "the rule that a criminal

24

defendant has a due process right to a jury instruction on self-defense." *Horton v. Warden, Trumbull Corr. Inst.*, 498 Fed. Appx. 515, 522 (6th Cir. 2012) (citing *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002), *cert. denied,* 537 U.S. 1007 (2002)). As stated in *Taylor*, "the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Taylor*, 288 F.3d at 851.

In Michigan, the Self Defense Act also justifies the use of deadly force in defense of others. Mich. Comp. Laws § 780.971 *et seq*. Michigan's Self Defense Act provides in pertinent part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> > (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm *to himself or herself or to another individual*.
> >
> > (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault *of himself or herself or of another individual*.

Mich. Comp. Laws § 780.972 (emphasis added).

25

Under Michigan law, the alleged aider and abettor (Mercer) is relieved of liability where the alleged principal (Janish) acted in defense of another. *See Neal v. Booker*, 497 Fed. Appx. 445, 450–51 (6th Cir. 2012), *cert. denied*, 568 U.S. 1147 (2013) (citing *People v. Johnson*, 116 Mich. App. 452, 323 N.W.2d 439, 441 (1982)), which holds that "if an attack by a principal is justified by self-defense both the principal and the aider and abettor are relieved from liability"). As such, Mercer was entitled to an instruction on the defense of others to the same extent that Janish was entitled to that instruction.

The trial court denied Janish's trial counsel's request for the defense of others instruction. Specifically, with regard to the defense of others as it applied to Mercer, Mercer's trial counsel stated at the *Ginther*[3] hearing: "[T]he position of the [trial judge] was that [Mercer] was not in a position to assert defense of others when she was, in fact, the person whom was being defended against by Mr. Janish[.]" (R. 7-14, *Ginther* Hearing, PageID 1461.) As set forth above, the trial judge was wrong on the law.

Further, at the *Ginther* hearing the judge also seemed to be under the impression that Janish *did* in fact receive the defense of others instruction, and that

---

[3] Under Michigan law, when a defendant raises a claim of ineffective assistance of counsel on appeal, factual disputes are to be resolved on the record at an evidentiary hearing before the trial judge. *People v. Ginther*, 390 Mich. 436, 441-42; 212 N.W.2d 922 (1973).

this was sufficient to assure that Mercer would have been acquitted if the jury found that defense of others applied to Janish's shooting of Thomas. (*Id.* at 1482.) However, while both defendants were *entitled* to the defense of others instruction, in fact *it was not given at all*. (R. 7-10, Trial Tr. 6/15/12, PageID. 1400-1402.)

During the *Ginther* hearing, the trial judge seemed to (correctly) acknowledge that Mercer's criminal liability was directly tied to Janish's, since she was charged only on a theory of aiding and abetting. (R. 7-14, *Ginther* Hearing Tr., PageID 1482). *See Neal v. Booker*, *supra*, 497 Fed. Appx. at 450–51 ("[T]he Michigan Court of Appeals was only partly correct in ruling that a self-defense instruction was unnecessary because Neal did not perform an act in defense of himself or others. Neal's claim of self-defense was vicarious, *based on a potential claim held by the shooters, not by Neal himself, who was prosecuted on a theory of aiding and abetting and not as a principal*. Michigan recognizes self-defense as a complete defense to an otherwise intentional homicide, so there would have been no crime for Neal to have aided and abetted had the shooters truly acted in self-defense.") (citations omitted) (emphasis added).  The notion that Mercer was not entitled to the instruction simply because she was not the shooter is incorrect.

The Michigan Court of Appeals strained to justify the trial court's conclusion that the defendants were not entitled to the instruction. It held:

27

In this case, there was no evidence to support that Janish had a "reasonable and honest belief" that the use of deadly force against Thomas was necessary to prevent imminent death, great bodily harm, or sexual assault. Although Janish informed police that he instructed Thomas to "get off" defendant and to "leave her alone," there was no evidence that Janish had a reasonable belief that Thomas was sexually assaulting defendant or about to cause her harm. Thomas was not an intruder. Rather, defendant invited Thomas into the house. Evidence showed that defendant called and spoke with Hannah three minutes before Janish shot him. Janish and defendant admitted that defendant invited the victims to the house. Evidence supported the inference that Thomas arrived thinking that he was going to have sex with defendant in exchange for the crack cocaine.

*People v. Mercer*, No. 312007, 2014 WL 4262998, at *8 (Mich. Ct. App. Aug. 28, 2014).

Whether the evidence at trial "supported the inference that Thomas arrived thinking that he was going to have sex with defendant in exchange for the crack cocaine" has no bearing on whether the jury should have been instructed on defense of others with regard to his death. Rather, the applicability of the defense turns on the evidentiary support for the belief of the person using the deadly force (in this case, Janish), not the decedent's sense of entitlement to the sexual assault. Mercer's and Janish's statements to the police each reveal that prior to shooting Thomas, Janish walked into his home and saw his girlfriend, Mercer, being assaulted by Thomas. Mercer had been pushed onto the bed. (R. 7-8, Trial Tr. 6/13/12, Pg. ID 1099-1100.) Thomas was standing over her. Janish told Thomas to

28

"get off" of Mercer and to "leave her alone." Thomas refused.  Janish shot him. (*Id.* at 1041.) Janish's statement made clear that he believed that Mercer was going to be assaulted or raped by Thomas. (*Id.* at 1099-1100.) Indeed, Mercer herself told police she had been afraid that Thomas was going to rape her before Janish shot him. (*Id.* at 1041.) The record provides ample support for a defense of others instruction, particularly where it is the only possible defense to the killing of Thomas.[4]

Further, there was testimony at trial about the stolen crack, the violent nature of Thomas and Hannah, as well as the threatening text messages that Hannah sent to Mercer, all of which Janish was aware. (*Id.* at 989-90, 1173; R. 7-7, Trial Tr. 6/12/12, Pg. ID 872.)   All of this evidence was presented at trial, and it further supported a reasonable jury finding that when Janish shot Thomas, he had an honest and reasonable belief that deadly force was necessary to prevent an imminent assault (sexual or otherwise) of Ms. Mercer.

As the Michigan Court of Appeals stated, there is some evidence in the  record supporting the inference that Thomas felt entitled to have sex with Mercer. However, as illustrated above, the record also supports the inference that Mercer had not consented to that sex, and that in response, Thomas was likely attempting to take her by force. The record further supports that Janish, after

---

[4] Thomas was 5'10" and weighed 300 lbs. (R. 7-7, Trial 6/1/12, PageID. 786)

witnessing the interaction between Thomas and Mercer, had an honest and reasonable belief that deadly force was necessary to prevent imminent sexual assault of Mercer. In any event, the reasonableness of that belief was a question for the jury, not the trial judge or the Michigan Court of Appeals. *Barker v. Yukins*, 199 F.3d 867, 874 (6th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000) ("We further believe that the Michigan Supreme Court *improperly invaded the province of the jury in determining that,* although the improper self-defense instruction was erroneous in Barker's case, *the error was harmless* because no reasonable juror could have believed that the force used by Barker was necessary to prevent rape by an 81-year old 'enfeebled' man.") (emphasis added).

Because the evidence in this case unequivocally supported a defense of others instruction concerning Janish's conduct when he shot Thomas, Mercer was entitled to that instruction as well. *See Neal, supra,* 497 Fed. Appx. at 450-51. Failing to provide the jury with that instruction deprived Mercer of any "meaningful opportunity to present a complete defense" for the killing of Thomas. *Barker, supra*, 199 F.3d at 876. *See California v. Trombetta*, 467 U.S. 479, 485 (1984); *Mathews v. United States*, 485 U.S. 58, 63 (1988) ("[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

30

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a federal court sitting in habeas review to defer to a state court's adjudication of a claim on the merits, unless the state adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §2254(d)(2).

A state prisoner who files a habeas petition in federal court can obtain relief where "the state-court ruling involved an unreasonable application of clearly established federal law *or rested on an unreasonable determination of the facts.*" *Madison v. Alabama*, 586 U.S. 265, 272; 139 S. Ct. 718 (2019) (emphasis added) (quotation marks omitted).  This issue, standing alone, can provide relief under subsection (d)(2) of §2254. The Sixth Circuit has explained:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we can overturn a state conviction for an issue adjudicated on the merits only if the relevant state-court decision was (1) "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States;" (2) "an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States;" or (3) *"based on an unreasonable determination of the facts in light of the evidence presented."* 28 U.S.C. § 2254(d).

*Miles v. Jordan*, 988 F.3d 916, 924 (6th Cir. 2021) (emphasis added).

"To prevail under the unreasonable determination of the facts clause, [Petitioner] must show an unreasonable determination of fact and that the state court

decision was based on that unreasonable determination." *Miles,* 988 F.3d at 924

(citing *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011)) (quotation marks omitted).

*See also Ray v. Bauman,* 326 F. Supp. 3d 445, 468 (E.D. Mich 2018) (finding

that state court decision "was an unreasonable determination of the facts" where the

state court of appeals ignored a transcript critical to petitioner's claim,

citing §2254(d)(2)).

In the instant case, the Michigan Court of Appeals made an unreasonable

determination of the facts when it determined that "[i]n this case, there was

*no evidence* to support that Janish had a 'reasonable and honest belief' that the

use of deadly force against Thomas was necessary to prevent imminent death, great

bodily harm, or sexual assault." *People v. Mercer*, No. 312007, 2014 WL

4262998, at *9 (Mich. Ct. App. Aug. 28, 2014) (emphasis added). The Michigan

Court of Appeals further found that, "there was *no evidence* that Janish acted out of

fear that defendant was in imminent danger." *Id* at *10 (emphasis added).    These

conclusions ignore facts that were plainly present in the trial court record.[5]

The jury should have been allowed to make this factual determination, not

the Michigan Court of Appeals based on its after-the-fact review of the record.  As

the district court here properly found, the state  court's  adjudication  that  Janish

---

[5] It is revealing that these paragraphs in the Michigan Court of Appeals opinion do not offer any specific cites to the record.  *Id.* at *9-10 (reproduced in the record in (R. 7-15, Michigan Court of Appeals Documents, at PageID. 1494-1495).

was not entitled to a defense of others instruction represents an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). (R. 36, Opinion and Order, PageID. 2163.)

Because Mercer's defense was, in turn, wholly based on whether Janish had a legitimate defense to the shooting, she was irreparably harmed by the Michigan Court of Appeals' unreasonable determination of the facts. This unreasonable determination directly infringed on Petitioner Mercer's federal constitutional right to present a defense. *See California v. Trombetta,* 467 U.S. 479 (1984), *Chambers v. Mississippi,* 410 U.S. 284 (1973), *Rock v. Arkansas,* 483 U.S. 44 (1987), *Strickland v. Washington,* 466 U.S. 668 (1984), *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974), and *Matthews v. United States,* 485 U.S. 58 (1988).

Respondent argues that Mercer's claim surrounding the defense of others instruction is not cognizable on habeas review. (App. Doc. 36, First Brief, Page 34.) Respondent is correct that *Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020) eliminated 28 U.S.C. § 2254(d)(1) as a viable legal theory for relief from the instructional issue in this case. (*Id*. at 25). However, Petitioner conceded that point in the district court and has maintained that concession. (R. 28, Petitioner's Second Supplemental Brief, PageID.2012)

Nevertheless, this issue is cognizable on habeas review under 28 U.S.C. § 2254(d)(2). As the district court explained, "[i]mportantly, where a petitioner makes a showing that satisfies Section 2254(d)(1) or Section 2254(d)(2), a district court may review the [petitioner's] claim *de novo*." (*Rice v. White*, 660 F.3d 242, 257 (6th Cir. 2011) (reviewing habeas claim de novo because state court unreasonably determined the facts when ruling on the claim). (R. 36, Opinion and Order, PageID. 2111.)

Respondent cites to *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993), to support the notion that Petitioner's claim is not cognizable under the constitutional right to present a defense. (App. Doc. 36, First Brief, Page 36.) Mercer's case is distinguishable from *Gilmore*. *Gilmore* involved an instruction that allowed a jury to return a verdict for murder without considering whether the defendant had a mental state that would support a voluntary manslaughter conviction instead. *Gilmore*, 508 U.S. at 335. In this case, Petitioner was completely deprived of an entire applicable defense instruction.

Respondent argues that the Michigan Court of Appeals reasonably concluded that there was "no evidence" to support the instruction. Respondent complains that "[t]he district court used but two words ("no evidence") to jettison AEDPA deference and instead apply de novo review. The errors in the district court's analysis abound." (App. Doc. 36, First Brief, Page 40.) Respondent

34

proceeds to spend the next five pages distinguishing and minimizing the facts that, according to Respondent and the Michigan Court of Appeals, amount to "no evidence." It is absurd to say there is no evidence in this record to support a defense of others instruction, and the district court was right to find that the Michigan Court of Appeals was unreasonable when it concluded otherwise.

Respondent characterizes the instructional issue as a "mixed question of law and fact" and takes the position that mixed questions are analyzed under 28 U.S.C. § 2254(d)(1) and not 28 U.S.C. § 2254(d)(2).  (App. Doc. 36, First Brief, Page 40.) The instruction issue here is not a mixed question of law and fact. If Mercer's claim involved an issue about how the law is applied to facts, that would be a mixed question of law and fact. Here, Mercer raises a purely factual question – was there "no evidence" to support the defense of others instruction? It is a yes or no question that revolves exclusively around the facts presented at trial. There is no legal question in this case about the defense of others statute. Rather, it is purely a question of whether there was "no evidence" to support the relevant instruction. Because this is a purely factual question, it is properly analyzed under 28 U.S.C. § 2254(d)(2). *Brumfield v. Cain*, 576 U.S. 305 (2015).

The district court recognized that both this Court and the Supreme Court have treated similar state court findings involving questions of whether there was "no evidence" as determinations of facts properly analyzed under 28 U.S.C. §

35

2254(d)(2). (R. 36, Opinion and Order, PageID. 2120-21.) The district court explained that in *Brumfield v. Cain*, the Supreme Court held that a state trial court's finding that the petitioner presented "no evidence of adaptive impairment" was "an unreasonable determination of fact" properly analyzed under 28 U.S.C. § 2254(d)(2). (*Id.* at 2020.) (citing *Brumfield v. Cain*, *supra*). It also explained that this Court used 28 U.S.C. § 2254(d)(2) when it held that the Michigan Court Appeals' "no evidence" finding in a case involving removal of a juror was a factual determination subject to review under (d)(2). (*Id.* at 2021.) (citing *Wofford v. Woods*, 969 F.3d 685, 697–98 (6th Cir. 2020). In *Brumfield* and *Wofford*, similar "no evidence" determinations were found to be properly challenged under (d)(2). As such, the district court properly analyzed this issue.

Respondent alternatively argues that even if (d)(2) applies the Michigan Court of Appeals reasonably concluded that there was no evidence to support the instruction. Under 28 U.S.C. § 2254(e)(1), factual findings are presumed to be correct. All parties and the district court agree on that. However, as held by the district court, Petitioner met the burden of rebutting that presumption by clear and convincing evidence that the Michigan Court of Appeals was outright wrong when it concluded that there was "no evidence" to support the defense of others instruction. (R. 36, Opinion and Order, PageID. 2125.) Even when Respondent discusses this issue, it is clear that there is evidence. Respondent cannot and did

36

not simply say there is no evidence and move on to the next argument. Rather, Respondent couched its position using language such as there is "no credible" evidence that Janish could have reasonably believed that Mercer was being assaulted. (App. Doc. 36, First Brief, Page 37.) Respondent then proceeded to walk through alleged "no evidence," attempting to minimize and distinguish what the record very clearly contains – enough evidence to warrant the defense of others instruction.  (App. Doc. 36, First Brief, Page 45-50.) The more Respondent writes about the alleged lack of evidence in an effort to distinguish all of the evidence, the clearer it becomes that a jury should have decided this issue, as held by the district court in this case. (R. 36, Opinion and Order, PageID. 2129.)

Respondent takes the position that Mercer has not shown the absence of the defense of others instruction was so unfair that it infected the trial with unfairness, and that every fairminded jurist would agree. (App. Doc. 36, First Brief, Page 51.) To the extent that Mercer has to meet this test, she has. Both defendants' statements clearly support this instruction, not just Mercer's. Their statements, which both support that Mercer was being assaulted, were central to the trial.

Petitioner seems to take issue with the fact that this argument is not squarely grounded in Supreme Court precedent. It does not have to be. As explained above, this issue is properly analyzed under 28 U.S.C. § 2254(d)(2), which unlike (d)(1) does not require a showing of unreasonable application of clearly established

federal law as determined by the Supreme Court. To that end, the district court did not err in its use of cases from the Second Circuit. There is no contrary case law from this Court, and the district court was free to look to this Court's sister circuits for guidance.

Respondent's position that any error related to the defense of others instruction was harmless is unsupportable. The district court rightly explained, "the *Brecht* test for harmless error asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict." (R. 36, Opinion and Order, PageID. 2156.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623; 113 S. Ct. 1710 (1993)) (cleaned up). In this case, it cannot be said that the jury would have rejected the defense of others when it never even had the chance to consider it. This was the only complete defense available to Mercer for the killing of Thomas. Respondent engages in an extended discussion about how the instruction would not have resulted in acquittal for Mercer. There is no way for anyone to predict what effect the instruction would have had on the jury when it was not given at all.

Respondent goes so far as to state, "[T]he jury would have rejected that defense, given the evidence, and they effectively did reject the defense, given their verdicts." (App. Doc. 36, First Brief, Page 54) (emphasis deleted). In a world where Janish got the defense of others instruction and the jury rejected it, it could make sense to say that the jury would have rejected that same defense as to Mercer too.

38

But that is not what happened here. Neither defendant got the defense of others instruction. It is impossible to say whether a jury would have rejected it. Had the instruction been given, the jury would have been told that it was the prosecutor's burden to prove that the defendants were not justified in shooting Thomas. The trial court's failure to instruct the jury on defense of others was not harmless.

IV. **DISTRICT COURT ERRED IN DENYING HABEAS RELIEF IN THE FORM OF A NEW SENTENCING RELATED TO VICTIM HANNAH, IN VIEW OF THE COURT'S HOLDING OVERTURNING THE CONVICTION AND SENTENCE RELATED TO VICTIM THOMAS.**

### Standard of Review

In an appeal from a habeas case under 28 U.S.C. § 2254(d), a district court's choice of habeas remedy for a constitutional violation is reviewed for abuse of discretion. *Morrell v. Wardens*, 12 F.4th 626. 630-34 (6th Cir. 2021).

### Argument

Based on the above argument (Issue III), the district court got it right by vacating Petitioner's conviction as to the Thomas murder and granting a new trial. But the district court got it wrong by failing to grant meaningful relief under 28 U.S.C. §2243, "as law and justice require," in the form of a new sentencing as to the Hannah murder.  As it stands, Barbara Mercer, despite the injustice that has been adjudicated in her favor, is on track to spend the rest of her life in prison — i.e., she has not obtained what justice requires.

39

Petitioner submits on appeal that the district court abused its discretion by failing to grant habeas relief — conditional or otherwise — in the form of a new sentencing hearing as to the Hannah murder.

Barbara Mercer is serving two life sentences — one for a second-degree murder conviction related to the death of Shemel Thomas and one for a second-degree murder conviction related to the death of Anthony Hannah. Mercer sought habeas relief before the district court for both convictions for various reasons. The district court opinion and order determined that Mercer is "entitled to habeas relief on a due process claim related to the denial of a defense of others jury instruction" and "denying habeas relief on all other claims." (R. 36, Opinion and Order, PageID.2077). The instructional issue was directly tied to just one of the murder convictions – the one involving Thomas.

In its April 25, 2022 opinion and order, the district court explained:

For the reasons stated above, the Court concludes the failure to provide the Defense of Mercer Instruction with respect to Thomas' death deprived Mercer of her due process right to present a defense, and the Court concludes that this constitutional error was not harmless. Accordingly, Mercer is entitled to habeas relief on her due process claim.

But it not yet clear to the Court what the form and scope of that relief should be. The failure to give the Defense of Mercer Instruction entitles Mercer to relief [from] her second-degree murder conviction and sentence arising out of the killing of Thomas (the killing to which the Instruction would have applied). The much harder question is whether the state trial court's error also entitles Mercer to relief from her sentence (but not

40

her conviction) for the second-degree murder of Hannah. There is some indication in the record that the state trial court based its sentence for that offense, at least in part, upon the fact that Mercer had been convicted of two murders. (8/9/2012 Tr., R. 7-13, PageID.1444.) There thus appears that a case could be made that Mercer's sentence for the murder of Hannah was tainted by her invalid conviction for the murder of Thomas. And there may be a further case to be made that under these circumstances, the Court can and should grant relief from Mercer's sentence for the murder of Hannah along with the relief from the conviction and sentence for the murder of Thomas.

The Court concludes that the most sensible way to proceed is to have the parties prepare a final round of supplemental briefs that addresses the scope-of-remedy issue.

(R. 36, Opinion and Order, PageID.2163-64).

Congress has explained that district courts have wide discretion when fashioning a remedy in a case where habeas relief is granted. "The court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243.

The Supreme Court has made this broad discretion clear as well. "Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987). "[T]he Court interpreted the predecessor of § 2243 as vesting a federal court with the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus.*" *Id*. (internal quotation marks omitted).

41

The Sixth Circuit has explained the b r e a d t h of this discretion as follows, in *Morrell v Wardens*, 12 F.4th 626, 631 (6th Cir. 2021):

> District courts have "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113 (1987). Under 28 U.S.C. § 2243, a court issuing a writ of habeas corpus shall "dispose of the matter as law and justice require." "The scope and flexibility of the writ," that allow courts to "cut through barriers of form and procedural mazes[,] have always been emphasized and jealously guarded by courts and lawmakers." *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082 (1969). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Id.* The chosen remedy should "cure the constitutional injury without unnecessarily infringing on competing interests of comity, federalism, and finality." *Ewing v Horton*, 914 F.3d 1027, 1032-33 (6th Cir. 2019)].

At a hearing on Petitioner's petition, the district court asked the following question: "Was there some sort of guideline calculation at her sentencing that assigned points for the separate murders such that we can objectively determine that the second murder conviction impacted the life sentence on the first murder conviction?" (R. 39, Hearing Tr., PageID.2209). The answer is "yes."

Michigan has its own sentencing guidelines system. The Michigan Sentencing Guidelines Manual outlines various "prior record variables" (PRVs) and "offense variables" (OVs) to be scored for different crimes. To calculate an individual's sentencing guidelines, the first step is to add up the points assessed

42

after review of each of the applicable PRVs and total points accumulated for OVs. The next step is to use the appropriate sentencing grid to determine the guideline range. Second Degree Murder has its own grid. Mich. Comp. Laws § 777.62. The total points scored in the PRV and OV categories will translate into an OV Level (I to III) and a PRV Level (A to F).

It can be "objectively determined" that the guidelines calculation would have been different if Mercer had only been convicted of one of the two homicides. Mercer was sentenced based on a sentencing guidelines range of 225 to 375 months (or life). This was based on a PRV Level C and an OV Level of III. R. 7-15, Michigan Court of Appeals Opinion, PageID.1501-02. This is the highest offense level for a PRV Level C offender (such as Ms. Mercer) convicted of second-degree murder. The following chart is set forth in Mich. Comp. Laws § 777.61:

43

M.C.L.A. 777.61

**777.61. Minimum sentence ranges for class M2**

Currentness

Sec. 61. The following are the minimum sentence ranges for class M2:

| | | | PRIOR RECORD VARIABLE LEVEL | | | |
|---|---|---|---|---|---|---|
| | A | B | C | D | E | F |
| Offense Variable Level | 0 points | 1-9 points | 10-24 points | 25-49 points | 50-74 points | 75+ points |
| I<br>0-49 points | 90-150 | 144-240 | 162-270 | 180-300<br>or life | 225-375<br>or life | 270-450<br>or life |
| II<br>50-99 points | 144-240 | 162-270 | 180-300<br>or life | 225-375<br>or life | 270-450<br>or life | 315-525<br>or life |
| III<br>100+ points | 162-270<br>or life | 180-300<br>or life | 225-375<br>or life | 270-450<br>or life | 315-525<br>or life | 365-600<br>or life |

**Credits**

P.A.1927, No. 175, c. XVII, § 61, added by P.A.1998, No. 317, Eff. Dec. 15, 1998.

Mercer's OV Level was III because she scored more than 100 points in her offense variable calculation. *Id*. The Michigan Sentencing Guidelines include an offense variable for number of deaths (OV9) which requires assessment of 100 points in homicide cases where "multiple deaths" occurred. Mich. Comp. Laws § 777.39.  Zero points are assessed if fewer than two deaths occurred. *Id*. Without one of the two homicide convictions (based on defense of others, or for any other reason), she would have scored 100 points less.[6] This would have resulted in significantly

---

[6] The Michigan Court of Appeals has held explicitly that when someone is found not criminally responsible for a death due to a self-defense theory (which includes "defense of others"), the trial court cannot consider that death for sentencing purposes. *People v Brown*, 339 Mich.App. 411, 426-27; 984 N.W.2d 486, 494 (2021).

44

fewer points toward the offense variable level, and lower guidelines. These lower numbers likely would have encouraged the sentencing judge to impose a term of years (rather than a life) sentence.

This effect on the guidelines is particularly significant in this case, since there were many reasons to impose a sentence of less than life on Barbara Mercer. She was a 21-year-old suffering from a drug addiction. She had no serious criminal record. She was not the shooter — at worst an aider and abettor. It is certainly difficult to understand why she received the same life sentence as the shooter (her co-defendant), Richard Janish. Without a valid second murder conviction it is even more difficult.

Thus, in response to the district court's question, there was a guidelines calculation at her sentencing that assigned points for the separate murder convictions. Mercer's guideline points would have been lower in the absence of the murder of Thomas. It is more than reasonable to suggest that her sentencing judge would not have imposed a life sentence if the lower numbers applied.

Courts have used a similar approach to that suggested by Petitioner, in what are commonly referred to as "sentencing package cases." Those courts explain that in multi-count cases on remand, sentences should be reimposed after taking into consideration all convictions and all sentences in the case, rather than looking at each

45

sentence on each individual conviction in a vacuum. With respect to sentencing package cases, the Supreme Court has said:

> Those cases typically involve multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction. The appeals court, in such instances, *may vacate the entire sentence on all counts* so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

*Greenlaw v. United States*, 554 U.S. 237, 253–54 (2008) (emphasis added). *See also Dean v. United States*, 581 U.S. 62, 67 (2017) ("As a general matter, [federal law] permit[s] a court imposing a sentence on one count of conviction to consider sentences imposed on other counts.").

The Sixth Circuit has long recognized the sentencing package doctrine. It is often applied in cases involving 18 U.S.C. § 924(c) convictions (consecutive sentence for firearm related to drug trafficking or crime of violence). Where a consecutive sentence imposed for § 924(c) is vacated, *the government* is entitled to a resentencing on all counts, so that the ultimate "aggregate sentence" is appropriate. *United States v Pasquarille*, 130 F3d 1220, 1222 (6th Cir. 1997).

The same logic should apply equally here, where it potentially favors a criminal defendant. As stated in *Pasquarille*, "§2255 [or in our case §2254] gives the court jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining

count." *Id.* at 1222. *See United States v. Ajan*, 731 F.3d 629, 634 (6th Cir. 2013) (in §2255 case, where the longest of multiple sentences was vacated by the Court of Appeals, "a district court resentencing Ajan for a far less egregious set of convictions under the now-advisory Guidelines may consider these factors and decide in its discretion to impose a sentence below the advisory range.").

In addition, the Tenth Circuit was faced with a closely analogous issue in *Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001). In that case, the state habeas petitioner was sentenced to death following convictions of premeditated murder, rape, and sodomy. The petitioner's rape and sodomy convictions were overturned, but the federal district court declined to vacate the petitioner's death sentence. *Id.* at 1044. It reasoned that "such relief was not warranted because [t]he jury had sufficient evidence to justify its conclusion that the three aggravating circumstances it found were present, even without the rape and sodomy convictions." *Id.* at 1060 (internal quotation marks omitted).

The Tenth Circuit reversed. The jury had sentenced the petitioner to death after hearing arguments that relied on rape and sodomy convictions that were later vacated. The Tenth Circuit explained that had those arguments not included the inflammatory rape and sodomy facts, the petitioner would have been painted in an entirely different light in front of his sentencing jury:

> As Mr. Mitchell's defense counsel pointed out at the
> federal evidentiary hearing, in representing a capital

47

defendant there is a qualitative difference in terms of the culpability between a defendant who rapes and sodomizes a victim and then kills her to silence her, and a defendant who kills in a fit of rage. Had the rape and sodomy charges not been before the jury, the state would have been unable to infuse the murder with prior sexual abuse or to argue that Mr. Mitchell killed the victim in a premeditated plan to avoid arrest and prosecution. All of the highly charged arguments that we have recited above would not have been presented to the jury. Both the guilt and sentencing stages would necessarily have had an entirely different focus and character.

*These circumstances undermine the fairness of the sentencing proceeding that resulted in Mr. Mitchell's death sentence; we simply cannot be confident that the jury would have returned the same sentence had no rape and sodomy evidence been presented to it.*

*Id.* at 1065. (emphasis added).

In our case, although not a death penalty case involving a sentencing jury, Petitioner stood before her sentencing judge and received the harshest sentence any Michigan state judge can give — life in prison.[7] As evidenced by the sentencing transcript, he imposed this sentence based on an understanding that Petitioner was responsible for the deaths of two people and that both deaths were unjustified. As with the sentence in *Mitchell,* it is impossible in this case to be "confident that the

---

[7] As indicated *supra* in Issue III, the judge even explained that it was his understanding that when it comes to a parolable life, "I saw the recommendation here and in considering that recommendation I pulled a number of articles on the parole board and the lifer law, and it appears now a days that the parole board, and for many, many, years now, has taken the position that *life means life*." (R. 7-13, Sentencing Tr., PageID.1443.) (emphasis added).

48

[judge] would have returned the same sentence" (*Mitchell, supra* at 1065) for the death of Hannah in the absence of a conviction for the death of Thomas.

In the instant case, Barbara Mercer is serving two life sentences stemming from a double homicide. One of those killings could have resulted in a not guilty verdict if she had received the jury instruction she was entitled to — a complete defense based on Michigan's Self Defense Act.

Instead, Mercer was convicted of both murders by a jury that was not properly informed. She stood before her sentencing judge tainted by an unconstitutional murder conviction. The sentencing judge saw her as being responsible for two murders that day, neither of which was justified in his mind:

> Ms. Mercer, even though you didn't pull the trigger here your actions in this particular matter make you just as guilty, if not more guilty.
>
> Even though you didn't pull the trigger you set everything up. You're the drug addict in this matter that caused all these problems. As a result of this Shemel Thomas, Anthony Hannah, their families will never see them again. They're always going to have to deal with what happened here, and the lack as they say so appropriately put, that they don't have any contact. There's no way for them to talk to them anymore, go see them. The impacts you had on their lives, your family's lives, you don't – you won't be able to raise your child, all over $150.00 worth of drugs.

(R. 7-13, Sentencing Tr., PageID.1443.)

With a constitutionally instructed jury, the killing of Thomas could have been *legally justified*. In that case, Mercer would have stood before her sentencing judge

49

as a potential victim of rape, whose codefendant justifiably killed Thomas, even if he had no valid justification for killing Hannah. That is an entirely different set of circumstances than the sentencing judge's conclusion that she set everything up. It follows that had this due process violation never occurred, she likely would not have been sentenced to life in prison. There is only one valid murder conviction here (Hannah), and it appears inescapable that that life sentence was affected by the invalid murder conviction (Thomas).

In habeas cases, courts have the rare ability to do justice; judges are granted the freedom to construct whatever remedy corrects the injustice. The statute commands that "[t]he court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Morrell v. Wardens*, 12 F.4th 626, 631 (6th Cir. 2021) (quoting *Harris v. Nelson*, 394 U.S. 286, 291 (1969))..In fact, in *Morrell*, based on a Sixth Amendment violation, this Court upheld the district court's habeas remedy of remanding petitioners' cases for full resentencings – similar to Petitioner's request in the instant case.

It is people situated like Barbara Mercer who demonstrate why that freedom and flexibility, when it comes to fashioning an appropriate remedy, are so important. The district court ruled that Ms. Mercer suffered one of the most egregious types of

50

constitutional violations. She was convicted of murder by a jury that was never made aware she had a full defense available — that the killing of Shemel Thomas was *justified*. Proper instructions could have resulted in acquittal of that offense altogether. This would have led directly to lower sentencing guideline numbers on the remaining homicide offense. And perhaps most importantly, it would have been a message from the jury: Shemel Thomas is dead because he would have raped Mercer if Janish had not killed him. Instead of walking into sentencing with that message, the sentencing judge walked in with the conclusion that Ms. Mercer intended for two people to die that day. He viewed her as cold, malicious, and deserving of a sentence of life in prison.

The district court had a statutory duty to dispose of this matter as law *and justice* require. In this case, justice requires not only that the verdict for the murder of Shemel Thomas be vacated, but also that Mercer have a remedy that is meaningful. Justice requires that she be sentenced with a proper guidelines calculation. It requires that she have an opportunity to be viewed accurately in the eyes of her sentencing judge. Affording Mercer this opportunity — to stand before her sentencing judge and be punished for what she did and nothing more — is the only way to dispose of this matter as justice requires.

The district court granted habeas relief (in the form of a new trial) with respect to the Thomas murder, but it rejected the only meaningful relief by denying the

51

remedy of a new sentencing with respect to the Hannah murder. (R. 56, Order Finalizing Terms of Relief, PageID.2402-10).

Petitioner argued in the district court that, in view of the court's decision to grant a new trial as to the Thomas murder, justice requires that it also grant a new sentencing as to the Hannah murder due to the effect of the Thomas conviction on the Hannah sentencing (under 28 U.S.C. §2243 and supportive caselaw). On appeal, Petitioner stands by that argument but also offers the following alternative requested relief (also raised in the district court). (See R.53, Petitioner's Supplemental Brief, PageID.2375-77).

In the alternative, the district should have at least, in addition to granting a writ for a new trial as to the Thomas murder, granted a *conditional writ* for a new sentencing as to the Hannah murder. Such a conditional writ would grant habeas relief conditioned on the result of a retrial for the Thomas murder. If (a) the State does not retry Petitioner within a certain number of days, or (b) Petitioner is acquitted of second-degree murder, then she would be entitled to habeas relief of a new sentencing on the Hannah murder. If, on the other hand, Petitioner is convicted of second-degree murder at a retrial, she may not be entitled to additional relief.

This alternative proposal is strongly supported by the United States Supreme Court's decision in *United States v. Tucker*, 404 U.S. 443 (1972) (where constitutionally invalid prior convictions were admitted against defendant at his trial,

52

Supreme Court upheld court of appeals finding that the defective convictions may have led the trial court to impose a heavier prison sentence than it would have imposed otherwise). The *Tucker* Court found that "the real question here" is whether the sentence in the case before it "might have been different if the sentencing judge had known" that the prior convictions were unconstitutionally obtained. The Supreme Court answered with a resounding "yes" and affirmed the judgment remanding to the trial court for reconsideration of the defendant's sentence. *Id*. at 448-49. *See also Bryan v. Brandon*, 228 Fed. Appx. 578, 583-84 (6th Cir. 2007) (relying on *Tucker*, Sixth Circuit affirmed habeas grant under §2254 for resentencing on second-degree murder where 60-year sentence was unconstitutionally based in part on an invalid prior conviction).

Therefore, based on *Tucker* and its specific application by the Sixth Circuit in *Bryan*, the district court should have at least granted conditional habeas relief in the form of a new sentencing with respect to the Hannah murder. Only this remedy would provide meaningful relief under 28 U.S.C. §2243 for the constitutional violation against Petitioner.

Petitioner additionally submits that the fact that the Michigan sentencing guidelines would still include the possibility of a life sentence has no effect on the appropriateness of the requested habeas relief. Without the Hannah murder, the state

53

guidelines are still different ("180-300 [months] or life" vs. "225-375 [months] or life"), and this fact supports Petitioner's argument for a new sentencing.

Sentencing guidelines are a paramount part of both federal and Michigan sentencing. *See United States v. Montgomery*, 998 F.3d 693, 700-01 (6th Cir. 2021); *see also People v. Lockridge*, 498 Mich. 358, 391-92; 870 N.W.2d 502 (2015) (applying same principle to Michigan guidelines). The United States Supreme Court has held that an incorrect guidelines range constitutes error: "This is so even if the ultimate sentence falls within both the correct and incorrect range." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).  The Michigan Supreme Court has similarly held that even where a decrease in a minimum sentencing range is "relatively small," it still can compel resentencing. *People v. Francisco*, 474 Mich. 82, 91-92, (2006).

In *Molina-Martinez, supra,* the United States Supreme Court ordered a resentencing for a defendant sentenced based on incorrect sentencing guidelines of 77 to 96 months, despite the defendant's 77-month sentence falling within the correct range of 70 to 87 months. *Id*. at 202.  In *Francisco*, the Michigan Supreme Court found that the defendant was entitled to a resentencing where the correct guideline range was 78 to 195 months, as opposed to 87 to 217 months, despite the defendant's sentence of 102 months falling within the correct range. *Id*. at 91.

54

In the present case, the fact that the existence of just one second-degree murder conviction still allows for a life sentence does not undermine Petitioner's position. As Petitioner has pointed out, being responsible for only one murder would decrease her sentencing range. If Petitioner is not held responsible for the killing of Mr. Thomas, the guidelines would decrease from 225-375 months to 180-300 months (while recognizing that each range still allows for life). See chart from Mich. Comp. Laws §777.61, *supra*. This decrease, 20 percent, is twice as large as the decreases in the minimum ranges in *Molina-Martinez* and *Francisco* that were found to warrant a new sentence (i.e., approximately 9 to 10 percent).

Thus, despite the upper range still including "or life," there is still too much uncertainty (as in *Molina-Martinez* and *Francisco*) as to how the sentencing judge would have sentenced Petitioner had the guidelines been scored without the Thomas death. *See* 578 U.S. at 202 and 474 Mich. at 91-92. *See also United States v Lavoie,* 19 F.3d 1102, 1104 (6th Cir. 1994) ("If the range the court used resulted from an incorrect application of the guidelines, an after-the-fact determination that the sentence actually imposed happened to be within the proper range does not cure the court's error"). Accordingly, at least in the situation where Petitioner is not retried for the murder of Mr. Thomas or is acquitted of second-degree murder, she is entitled to a new sentencing as to the murder of Mr. Hannah. As it stands, Petitioner,

although subjected to an egregious constitutional error, has not been provided any meaningful relief.

The district court, in its Order Finalizing Terms of Habeas Relief, acknowledged 28 U.S.C. §2243 and its command to "dispose of the matter as law and justice require," as well as this Court's direction in *Morrell v. Wardens*, 12 F.4th 626, 631 (6th Cir. 2021), to "insure that miscarriages of justices within its reach are surfaced and corrected." (R. 56, Order Finalizing Terms of Relief, PageID. 2402-03).  But the district court failed to do so in any meaningful way.

The most direct route to "justice" would be to grant habeas relief as to the Hannah sentence given the obvious effect of the Thomas due process violation on the Hannah sentence.  As it stands, Petitioner did not get a fair trial as to Thomas and, due to that error, did not get a fair sentencing as to Hannah.

At a minimum, however, the district court should have granted Petitioner's alternative request for a writ conditioned on an acquittal for the Thomas murder (or failure to retry Petitioner). The district court in its opinion did not even address Petitioner's primary authority in support of this alternative remedy — the Supreme Court's decision in *United States v Tucker*, discussed *supra*.[8]   (R. 56, Order

---

[8] This omission was surprising given the district court's lengthy discussion (at the final oral argument below) of the power of the *Tucker* decision, not to mention the state attorney's candid acknowledgment at that hearing that *Tucker* was problematic in terms of his position. (R. 63, 12/8/23 Tr. at 45-49, PageID. 2505-09.)

Finalizing Terms of Habeas Relief, PageID. 2408-10). *Tucker* provides strong support for Petitioner's alternative request for relief.

One final point underscores the inadequacy of the district court's remedy. The State is in complete control of whether there will ever be a retrial of the Thomas murder. The district court's remedy opinion repeatedly refuses relief as to the Hannah sentencing because Petitioner has not yet been acquitted of the Thomas murder (calling this request "premature"). But the State has no real incentive to *ever* conduct such a trial; therefore, Barbara Mercer will likely never get the chance to meet this precondition. As a result, the district court's "remedy" is empty. Based on §2243, *Tucker,* and *Morrell*, this Court should correct that.

## **CONCLUSION**

For all the foregoing reasons, in Case No. 24-1707, this Court should affirm the district court's order granting habeas relief in the form of a new trial for Petitioner (for the second-degree murder of Shemel Thomas).

Furthermore, in Case No. 24-1751, this Court should reverse the district court's order denying all other habeas relief in the form of a new trial and/or sentencing for Petitioner (for the second-degree murder of Shemel Thomas and the second-degree murder of Anthony Hannah).

Respectfully Submitted,

s/David A. Koelzer
Federal Community Defender
Eastern District of Michigan – Flint
Attorney for Petitioner
111 E. Court St., Suite L-100
Flint, Michigan 48502
(810) 232-3600
david_koelzer@fd.org

s/ Casey N. Swanson
Federal Community Defender
Eastern District of Michigan - Detroit
Attorney for Petitioner
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
(313) 967-5542
casey_swanson@fd.org

March 14, 2025

## **DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Petitioner Appellee/Cross-Appellant designates the following record documents (that have not been designated by respondent):

| Record Number | Document Description | Page ID Range |
|---|---|---|
| 7-6 | Jury Trial Transcript, June 11, 2012 | 479-692 |
| 7-7 | Jury Trial Transcript, June 12, 2012 | 693-908 |
| 7-14 | *Ginther* Hearing Transcript, April 22, 2014 | 1447-1485 |
| 7-16 | Michigan Supreme Court Documents | 1751-1851 |
| 13 | Reply to Response to Petition | 1923-1943 |
| 20 | Supplemental Brief in Support of Petition | 1956-1978 |
| 21 | Supplemental Answer Opposing Petition | 1979-1998 |
| 28 | Second Supplemental Brief in Support of Petition | 2011-2025 |
| 39 | Transcript, Hearing on Petition, October 20, 2021 | 2192-2271 |
| 57 | Judgment | 2416-2417 |
| 58 | Notice of Appeal, Respondent | 2418-2420 |
| 60 | Notice of Appeal, Petitioner | 2441-2442 |
| 63 | Motion Hearing, December 8, 2023 | 2461-2510 |

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the briefing schedule in this case because it contains fewer than 15,300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The brief contains approximately 13,500 words.


s/David A. Koelzer
Federal Community Defender
Eastern District of Michigan – Flint
Attorney for Petitioner
111 E. Court St., Suite L-100
Flint, Michigan 48502
(810) 232-3600
david_koelzer@fd.org

s/ Casey N. Swanson
Federal Community Defender
Eastern District of Michigan - Detroit
Attorney for Petitioner
613 Abbott Street, 5th Floor
Detroit, Michigan 48226
(313) 967-5542
casey_swanson@fd.org


Dated: March 14, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification to opposing counsel of record.

<u>s/ Casey Swanson</u>
Counsel for Petitioner

Dated: March 14, 2025

61