Nos. 24-1707, 24-1751

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BARBARA MERCER,

     Petitioner-Appellee/Cross-Appellant,

v.

ANTHONY STEWART,

     Respondent-Appellant/Cross-Appellee.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Matthew F. Leitman

## THIRD BRIEF OF RESPONDENT-APPELLANT

<div style="margin-left:50%">

Dana Nessel
Michigan Attorney General

Ann M. Sherman (P67762)
Solicitor General

Scott R. Shimkus (P77546)
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing MI  48909
517-335-7650

</div>

Dated:  May 14, 2025

# TABLE OF CONTENTS

Page

Table of Authorities..................................................................... iii

Introduction ...................................................................................1

Summary of Argument......................................................................2

Argument......................................................................................5

I.  Fairminded jurists could agree with the state appellate court's merits adjudication of Mercer's ineffective-assistance-of-trial-counsel claim from her counsel's initial, mistaken reliance on a duress defense, where the prosecutor and judge made the same mistake until it was jointly rectified.......................5

    A.  The Michigan Court of Appeals rejected this claim on the merits, conferring AEDPA deference. ..............................5

    B.  Ineffective assistance is difficult to establish even on first-level review and is doubly difficult under AEDPA.........8

    C.  Because everyone, not just Mercer's counsel, was mistaken about duress, and counsel ultimately argued that Mercer lacked the mens rea for any of the charges and was not an accomplice, the Michigan Court of Appeals' rejection of this claim was reasonable. ..................12

II.  The Michigan Court of Appeals reasonably determined that the prosecutor's brief misstatement of law in rebuttal closing argument did not render the entire trial fundamentally unfair, barring habeas relief. ......................................23

    A.  AEDPA insulates this claim because the Michigan Court of Appeals adjudicated it on the merits. ...................23

    B.  The Supreme Court has been clear that state courts have significant leeway in adjudicating prosecutor-

misconduct claims under the high *Darden* standard, made higher still by AEDPA...................................................25

C. Mercer fails to show that the Michigan Court of Appeals' merits adjudication was unreasonable under clearly established federal law, where the prosecutor's error did not infect the entire trial. ......................................28

III. Mercer's defense of the habeas grant in this case only accentuates its numerous flaws...................................................35

A. The absence of a self-defense (or defense-of-others) jury instruction is not a cognizable claim on habeas review.......35

B. Context shows that the Michigan Court of Appeals did not unreasonably determine the facts. ..................................38

C. Regardless of the standard of review, the district court was wrong to find a constitutional violation from the lack of a defense-of-others instruction..................................43

D. The harmlessness of any instructional error in this case is readily discernible from the record. ..........................46

IV. The district court properly exercised its discretion in tailoring the habeas remedy to the only conviction on which habeas relief was granted rather than extending the remedy to the sentence of the undisturbed conviction. ..............................51

A. Districts courts possess wide discretion in crafting habeas remedies..................................................................51

B. The district court did not abuse its discretion in devising a narrowed habeas remedy in this case.................53

Conclusion and Relief Requested.........................................................62

Certificate of Compliance...................................................................63

Certificate of Service ........................................................................64

Designation of Relevant District Court Documents..............................65

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Arizona v. Fulminante,*
499 U.S. 279 (1991) ...............................................................47

*Batson v. Kentucky,*
476 U.S. 79 (1986) .................................................................42

*Bell v. Cone,*
535 U.S. 685 (2002) ...............................................................10

*Bergman v. Howard,*
54 F.4th 950 (6th Cir. 2022)..................................................42

*Brecht v. Abrahamson,*
507 U.S. 619 (1993) ......................................... 11, 46, 48, 50

*Brown v. Davenport,*
596 U.S. 118 (2022) ...............................................................56

*Buffin v. United States,*
513 F. App'x 441 (6th Cir. 2013) ..........................................56

*Byrd v. Collins,*
209 F.3d 486 (6th Cir. 2000) ................................................26

*Chapman v. California,*
386 U.S. 18 (1967) .................................................................47

*Cullen v. Pinholster,*
563 U.S. 170 (2011) .................................................................9

*Cupp v. Naughten,*
414 U.S. 141 (1973) ...............................................................45

*Dale v. Haeberlin,*
878 F.2d 930 (6th Cir. 1989) ................................................55

*Darden v. Wainwright,*
477 U.S. 168 (1986) .......................................................... 26, 27, 31, 33

*Davis v. Strack,*
270 F.3d 111 (2d Cir. 2001) ............................................................ 45

*Delaware v. Van Arsdall,*
475 U.S. 673 (1986) ......................................................................... 18

*DePew v. Anderson,*
311 F.3d 742 (6th Cir. 2002) ........................................................... 55

*Donnelly v. DeChristoforo,* 416 U.S. 637 (1974) ......................... 26, 27, 31

*Dunn v. Reeves,*
594 U.S. 731  (2021) ........................................................................ 12

*Engle v. Isaac,*
456 U.S. 107 (1982) ......................................................................... 36

*English v. Romanowski,*
602 F.3d 714 (6th Cir. 2010) ...................................................... 17, 18

*Estelle v. McGuire,*
502 U.S. 62 (1991) ........................................................................... 44

*Ewing v. Horton,*
914 F.3d 1027 (6th Cir. 2019) ......................................... 52, 54, 55, 57

*Fry v. Pliler,*
551 U.S. 112 (2007) ......................................................................... 43

*Gideon v. Wainwright,*
372 U.S. 335 (1963) ......................................................................... 60

*Gilmore v. Taylor,*
508 U.S. 333 (1993) .................................................................... 37, 38

*Groves v. Meko,*
516 F. App'x 507 (6th Cir. 2013) ...................................................... 55

iv

*Hall v. Vasbinder,*
  563 F.3d 222 (6th Cir. 2009) ............................................................... 11

*Harrington v. Richter,*
  562 U.S. 86 (2011) ...................................................................... passim

*Harrison v. McBride,*
  428 F.3d 652 (7th Cir. 2005) ............................................................ 43

*Herrera v. Collins,*
  506 U.S. 390 (1993) .......................................................................... 36

*Hill v. Lockhart,*
  474 U.S. 52 (1985) ............................................................................ 47

*Hilton v. Braunskill,*
  481 U.S. 770 (1987) .......................................................................... 52

*Hodge v. Plappert,*
  ___ F.4th ___; 2025 WL 1324254 (6th Cir. May 7, 2025) ................... 40

*Keahey v. Marquis,*
  978 F.3d 474 (6th Cir. 2020) ...................................................... passim

*Knowles v. Mirzayance,*
  556 U.S. 111 (2009) .......................................................................... 11

*Lafler v. Cooper,*
  566 U.S. 156 (2012) ..................................................................... 17, 53

*Marshall v. Rodgers,*
  569 U.S. 58 (2013) ............................................................................ 38

*Mathews v. United States,*
  485 U.S. 58 (1988) ............................................................................ 35

*Mays v. Hines,*
  592 U.S. 385 (2021) ........................................................... 7, 25, 31, 44

*McMullan v. Booker,*
  761 F.3d 662 (6th Cir. 2014) ............................................................ 42

*Miranda v. Arizona*,
384 U.S. 436 (1966) ...............................................................42

*Morrell v. Wardens*,
12 F.4th 626 (6th Cir. 2021)...................................... 51, 57, 60

*Neder v. United States*,
527 U.S. 1 (1999) ...................................................................47

*Nicholson v. United States*,
78 F.4th 870 (6th Cir. 2023)...................................................48

*Padilla v. Kentucky*,
559 U.S. 356 (2010) ...............................................................10

*Parker v. Matthews*,
567 U.S. 37 (2012) ..................................................... 26, 32, 34

*People v. Beck*,
939 N.W.2d 213 (Mich. 2019)................................................59

*People v. Brown*,
984 N.W.2d 486 (Mich. Ct. App. 2021) .................................59

*People v. Reichard*,
949 N.W.2d 64 (Mich. 2020)..................................................15

*People v. Riddle*,
649 N.W.2d 30 (Mich. 2002)............................................ 39, 40

*People v. Sargent*,
750 N.W.2d 161 (Mich. 2008)................................................59

*Rashad v. Lafler*,
675 F.3d 564 (6th Cir. 2012) ........................................... 43, 44

*Reed v. May*,
134 F.4th 455 (6th Cir. 2025)........................................ passim

*Renico v. Lett*,
559 U.S. 766 (2010) ...............................................................45

*Rogers v. Mays,*
  69 F.4th 381 (6th Cir. 2023) ................................................................ 40

*Schriro v. Landrigan,*
  550 U.S. 465 (2007) ......................................................................... 10

*Scott v. Elo,*
  302 F.3d 598 (6th Cir. 2002) ........................................................... 32

*Shinn v. Kayer,*
  592 U.S. 111 (2020) ......................................................................... 10

*Slagle v. Bagley,*
  457 F.3d 501 (6th Cir. 2006) ........................................................... 27

*Smith v. Phillips,*
  455 U.S. 209 (1982) ................................................................... 26, 28

*Smith v. Stegall,*
  385 F.3d 993 (6th Cir. 2004) ........................................................... 31

*Stewart v. Trierweiler,*
  867 F.3d 633 (6th Cir. 2017) ...................................................... 27, 33

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................................. passim

*Sullivan v. Louisiana,*
  508 U.S. 275 (1993) ......................................................................... 48

*Taylor v. Withrow,*
  288 F.3d 846 (6th Cir. 2002) ........................................................... 35

*Thompson v. Rapelje,*
  839 F.3d 481 (6th Cir. 2016) ................................................. 18, 19, 21

*Thornell v. Jones,*
  602 U.S. 154 (2024) ......................................................................... 10

*Troiano v. United States,*
  918 F.3d 108 (9th Cir. 2019) ........................................................... 58

vii

*Turchin v. Clendenion,*
　No. 235129, 2023 WL 5181046 (6th Cir. June 14, 2023)....................36

*United States ex rel. Hampton v. Leibach,*
　347 F.3d 219 (7th Cir. 2003) ...................................................... 17, 18

*United States v. Carmichael,*
　216 F.3d 224 (2d Cir. 2000)...........................................................53

*United States v. Tucker,*
　404 U.S. 443 (1972) ......................................................................60

*United States v. Watts,*
　519 U.S. 148 (1997) ......................................................................60

*Weaver v. Massachusetts,*
　582 U.S. 286 (2017) ......................................................................47

*Weeks v. Angelone,*
　528 U.S. 225 (2000) ......................................................................32

*West v. Bell,*
　550 F.3d 542 (6th Cir. 2008) .........................................................29

*White v. Plappert,*
　131 F.4th 465 (6th Cir. 2025)................................................. passim

*Williams v. Burt,*
　949 F.3d 966 (6th Cir. 2020) ...........................................................8

*Wilson v. Corcoran,*
　562 U.S. 1 (2010) ..........................................................................44

*Wogenstahl v. Mitchell,*
　668 F.3d 307 (6th Cir. 2012) .........................................................32

*Wright v. Schiebner,*
　No. 1:23-cv-472, 2024 WL 5153098 (W.D. Mich. Dec. 18, 2024) .........56

*Yarborough v. Alvarado,*
　541 U.S. 652 (2004) ......................................................................27

**Statutes**

§ 2254(d) ......................................................................... passim

§ 2254(d)(1) ............................................................................. 36, 42

§ 2254(d)(2) ...................................................................... passim

28 U.S.C. § 2243 ...................................................................... 52, 53

28 U.S.C. § 2254 .......................................................................... 1, 36

28 U.S.C. § 2254(a) ................................................................... 36, 43

Antiterrorism and Effective Death Penalty Act (AEDPA) ............. passim

Mich. Comp. Laws § 750.316(1)(a) ......................................................31

Mich. Comp. Laws § 777.39(1)(a) ........................................................59

Mich. Comp. Laws § 777.39(2)(a) ........................................................58

Mich. Comp. Laws § 791.234(7)(a) ......................................................31

**Rules**

Federal Rule of Appellate Procedure 28.1(e)(2)(A)(i) .............................63

Federal Rule of Appellate Procedure 32(a)(5) .......................................63

Federal Rule of Appellate Procedure 32(a)(6) .......................................63

Federal Rule of Appellate Procedure 32(f) .............................................63

Sixth Circuit Rule 28(a), 28(a)(1)-(2), 30(b) ..........................................65

## INTRODUCTION

In passing the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, Congress intended for habeas petitioners to "face[ ] a steep climb for relief." *White v. Plappert*, 131 F.4th 465, 478 (6th Cir. 2025). The district court in this case properly concluded that Mercer failed to summit AEDPA's slopes on her ineffective-assistance-of-trial-counsel and prosecutor-misconduct claims.

For her jury-instruction claim, though, the court airlifted Mercer to the top, improvidently granting habeas relief. In defending the habeas grant, Mercer repeated all the district court's mistakes. They both passed over the fact that the Supreme Court has never established a constitutional right to a self-defense (or defense-of-others) instruction. They removed the Michigan Court of Appeals' "no evidence" conclusions from their contexts. They said the lack of instruction tainted the entire trial. And they dismissed the harmlessness of any error. Reversal is thus required.

Provided the grant is sustained, the district court properly used its discretion to tailor the remedy to the only granted constitutional claim. Thus, alternatively, the remedy should be affirmed.

1

## SUMMARY OF ARGUMENT

"[T]o get past the [AEDPA] relitigation bar, there must be *no* room for fairminded disagreement." *Reed v. May*, 134 F.4th 455, 465 (6th Cir. 2025). The district court correctly recognized there *is* room for such disagreement on Mercer's ineffective-assistance and prosecutor-misconduct claims, both of which the Michigan Court of Appeals adjudicated on the merits. AEDPA deference therefore applies.

First, defense counsel. At the beginning of Mercer and Janish's joint trial, everyone, including the prosecutor and the trial court, were under the impression that Mercer could assert duress for all charges. Mercer's counsel thus briefly asked about it during voir dire, the court issued preliminary instructions on it, and counsel mentioned it in his opening statement. It was not until after his opening that the prosecutor identified everyone's mistake: duress was not a defense against any homicide charges. Duress was not mentioned again until the prosecutor's rebuttal closing argument, where the prosecutor informed the jury that *everyone* was initially mistaken about duress and clarified that it was not applicable. The court also instructed the jury not to consider duress. On these facts, and with double deference under

2

AEDPA, there is certainly room for fairminded disagreement on this claim such that habeas relief is not warranted.

Second, the prosecutor. Mercer claims constitutional error when the prosecutor made misstatements of law in his rebuttal closing argument. The prosecutor argued that the hearsay exceptions are based on the inherent believability of certain types of statements, and, so, the exception allowing admission of a defendant's statements against interest mean that those statements are inherently believable. The prosecutor then drew a mistaken corollary that a defendant's self-serving statements are inherently unbelievable. Mercer's counsel objected and the court informed the jury that the hearsay laws are very complex but allowed the prosecutor to continue. The Michigan Court of Appeals held that the prosecutor's misstatements were inappropriate, but because they ultimately went to credibility and the jury was instructed that they were the sole finders of credibility and the attorneys' statements were not evidence, there was no constitutional error. The district court aptly found that fairminded jurists could agree with the state appellate court's conclusion. So, too, should this Court.

3

But the district court faltered when it came to Mercer's jury-instruction claim. Not only did the district court find the claim cognizable (it isn't), but it went on to find that the Michigan Court of Appeals unreasonably determined the facts under § 2254(d)(2) (it didn't), reviewed the claim de novo, found a constitutional violation, and denied harmless error. Precedents from the Supreme Court and this Court reveal the gravity of the district court's flaws, including that there is not a constitutional right to a self-defense (or defense-of-others) instruction. And even if there was, the instruction was properly denied in this case. At the very worst, any error was harmless. Mercer's arguments to the contrary are unpersuasive.

Finally, if the habeas grant is upheld, Mercer disputes the remedy. Despite the habeas grant being limited to the conviction for the murder of Shemel Thomas, Mercer sought to stretch the remedy to encompass the sentence of the other, unaffected murder conviction for Anthony Hannah. But the district court declined to do so, upholding its duty to tailor the remedy to the constitutional violation. Anything more would have offended AEDPA's precepts of comity and federalism.

The grant should be reversed, and the denials should be affirmed.

4

## ARGUMENT

I.   **Fairminded jurists could agree with the state appellate court's merits adjudication of Mercer's ineffective-assistance-of-trial-counsel claim from her counsel's initial, mistaken reliance on a duress defense, where the prosecutor and judge made the same mistake until it was jointly rectified.**

Mercer first claims ineffective assistance of trial counsel for counsel's initial, mistaken reliance on the defense of duress, which was later corrected. The Michigan Court of Appeals rejected this claim on the merits, and the district court found no unreasonable error. The record supports these conclusions.

### A.   The Michigan Court of Appeals rejected this claim on the merits, conferring AEDPA deference.

The Michigan Court of Appeals determined that because the duress defense was only briefly mentioned at the beginning of the trial and counsel pivoted to an elements-based defense in his closing argument, counsel was not ineffective:

> Defendant next argues that she was denied her right to a properly instructed jury when the trial court provided a preliminary instruction on duress, which was later withdrawn. Defendant also argues that counsel was ineffective for referencing a duress defense during his opening statements.

5

This Court reviews de novo questions of law arising from the provision of jury instructions. [*People v.*] *Guajardo,* 300 Mich.App [26,] 34 [(2013)]. "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." [*People v.*] *Dupree,* 486 Mich. [693,] 702 [(2010)]. Whether defendant was denied her right to the effective assistance of counsel involves a mixed question of fact and constitutional law. [*People v.*] *LeBlanc,* 465 Mich. [575,] 579 [(2002)]. A trial court's factual findings, if any, are reviewed for clear error while questions of constitutional law are reviewed de novo. *Id.* at 599–600.

During voir dire, counsel for defendant informed the prospective jurors that he anticipated a duress defense. The trial court instructed the jury on duress during preliminary instructions. Defense counsel then mentioned duress during his opening statement, arguing "the prosecutor has to prove beyond a reasonable doubt that there was no duress." During rebuttal, the prosecutor informed the jury that duress was not a defense. The trial court provided its final jury instructions wherein the court stated that the duress instruction "was inapplicable in the context of this case. You are not to consider duress in your deliberations in any form."

In this case, with respect to the court's initial instruction on duress, defendant waived any objection to the instruction when her counsel requested the instruction. See [*People v.*] *Carter,* 462 Mich. [206,] 215 [(2000)]. Moreover, defendant cannot show that, but for the references to the duress instruction, the result of the proceeding would have been different. [*People v.*] *Carbin,* 463 Mich. [590,] 600 [(2001)].

In this case, even absent the duress instruction, counsel employed a viable defense strategy when he advanced the theory that defendant was not guilty of murder or conspiracy beyond a reasonable doubt. In his opening statement, counsel argued that the victims posed a threat and claimed that defendant planned to scare the victims. He argued that defendant did not hold the gun or pull the trigger and was

surprised when Janish killed the victims. During closing argument, counsel repeated the theme, claiming that the victims were dangerous drug dealers who posed a real threat. Counsel argued that defendant was guilty of "conspiring to scare" the victims. Counsel argued that defendant was surprised when Janish killed the victims as evidenced by both defendants' statements to police that she "freaked out" after the shootings. Counsel reminded the jury that, despite the interrogations, defendant did not wavier on her insistence that she only intended to scare the victims and that Janish said the same thing. Counsel also noted that defendant did not even realize there was a dead man outside and he argued that it was reasonable for Janish to think that Hannah's cell phone was a weapon.

Considering that duress was only briefly mentioned at the start of the trial, and considering that counsel advanced an alternate theory during trial, we conclude that defendant has failed to show that, but for the duress instruction, the result of the proceeding would have been different. *Id.*

*People v. Mercer*, No. 312007, 2014 WL 4262998, at \*14–15 (Mich. Ct. App. Aug. 28, 2014).

Because this decision was on the merits, AEDPA deference applies. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This means Mercer must show that the state courts "managed to blunder so badly that *every* fairminded jurist would disagree" with the Michigan Court of Appeals' decision. *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam) (emphasis added). There was no such blunder in this case.

**B.    Ineffective assistance is difficult to establish even on first-level review and is doubly difficult under AEDPA.**

To establish ineffective assistance of counsel, a petitioner must show *both* that counsel's performance was deficient and that counsel's action or inaction caused actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Both prongs must be satisfied to establish ineffective assistance; if a petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697. Moreover, there must be a "cause-and-effect relationship between the deficient performance and any prejudice suffered by the defendant." *Williams v. Burt*, 949 F.3d 966, 975 (6th Cir. 2020) (citing *Strickland*, 466 U.S. at 687).

With respect to performance, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Yet the reviewing court is required not simply to give the

8

attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). The *Strickland* standard "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110.

The prejudice prong requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Richter*, 562 U.S. at 112). Reviewing courts must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."

9

*Id.* at 696. While this standard is somewhat lesser than a preponderance, "the difference should matter only in the rarest case." *Thornell v. Jones*, 602 U.S. 154, 164 (2024) (cleaned up).

The standard under *Strickland* alone is "a most deferential one." *Richter*, 562 U.S. at 102–03. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 105. "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). It is "among the 'most deferential' standards in American law." *White*, 131 F.4th at 478 (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020)).

But on habeas review, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone,* 535 U.S. 685, 698–99 (2002). The question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Richter*, 562 U.S. at 101 ("The pivotal question is whether the state

10

court's application of the *Strickland* standard was unreasonable."). "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 562 U.S. at 89. Additionally, "[t]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

State-court merits adjudications of ineffective-assistance claims are entitled to *double* deference on habeas review. *Richter*, 562 U.S. at 105 (because *Strickland* and § 2254(d) are both "highly deferential," review under both is "doubly so" (cleaned up)); *accord White*, 131 F.4th at 478 (noting the "deference to the defense attorney and deference to the state court"). Thus, "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* And because the *Strickland* standard is more general, "a State court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 120 (2009).

11

"If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 562 U.S. at 102.  Where "a state court has decided that counsel performed adequately," "a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision."  *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (per curiam) (cleaned up; emphasis in original).

**C.    Because everyone, not just Mercer's counsel, was mistaken about duress, and counsel ultimately argued that Mercer lacked the mens rea for any of the charges and was not an accomplice, the Michigan Court of Appeals' rejection of this claim was reasonable.**

Mercer fails to show that the district court erred in rejecting this claim under AEDPA's double deference for ineffective-assistance claims. The district court accurately outlined the facts in the record regarding the fleeting references to any duress defense and then explained why the Michigan Court of Appeals' decision was reasonable under *Strickland*.  (4/25/22 Op. & Order, R. 36, Page ID #2164–70.)

Mercer's primary contention is that because defense counsel mistakenly advocated for a duress defense in this case, which later required correction, counsel must have lost all credibility with the jury

12

for himself and for Mercer.  (3/14/25 Second Br. at 15.)  But, as the district court concluded, that could not have been the case because the mistake was presented to the jury as one shared by everyone, including the prosecutor and the trial court.  (4/25/22 Op. & Order, R. 36, Page ID #2167, 2170.)

True, Mercer's counsel made a single mention of duress during voir dire, but only in the context of his anticipation that the *court* would read an instruction on duress, meaning, in his own words, "when you're placed in a position to do something you would [not] have ordinarily done by outside forces[.]"  (6/11/12 Trial Tr., R. 7-6, Page ID #539.)  The subject was never raised again on voir dire.  Thus, at the very outset the jurors were under the impression that duress was a legal principle emanating from the court, not from defense counsel.

Duress was next mentioned the following day when the *court* gave preliminary instructions on it.  (6/12/12 Trial Tr., R. 7-7, Page ID #716–17.)  Defense counsel uttered not a word at that stage.  What is more, the court told the jurors that "*each of the defendants* say that he or she is not guilty because someone else's threatening behavior made him or her act as he or she did."  (*Id.*, Page ID #716 (emphasis added).)

13

Remember, Mercer and Janish were tried together. Hence, the effect on the jury was not only that the notion of duress came from the trial court, perhaps applying, as far as they knew, in any given case, but also that Mercer *and* Janish claimed duress. The jury had no reason to attribute any mistake solely to Mercer's counsel.

Her counsel then made a brief, near fleeting reference to duress in his opening statement. (*Id.*, Page ID #758.) Still, the thrust of his argument was that "when it comes to Barbara Mercer, she never held a gun, she never pulled the trigger, she never lit a fire." (*Id.*) He instead put everything on Janish. (*Id.*, Page ID #758–59.)

So, when the prosecutor afterwards voiced concern, outside the presence of the jury, that duress is not a defense to homicide—to which, until that point, the prosecutor had not objected—the jury had no reason to hold anything against Mercer's counsel. (*Id.*, Page ID #760.) After the prosecutor's correction, the *court* removed any mention of duress from the jurors' instruction booklets. (*Id.*, Page ID #761, 763.)

Moreover, there was some debate about whether the defense of duress applied the *conspiracy*-to-commit-homicide charges. (*Id.*, Page ID #760–63.) Mercer's counsel agreed that duress was not a defense to

14

homicide, but Mercer and Janish were also charged with conspiracy, to which counsel legitimately believed duress could apply. (*Id.*, Page ID #761.) Notably, Janish's counsel echoed that duress should apply to the conspiracy charge. (6/14/12 Trial Tr., R. 7-9, Page ID #1271.) While the trial court ultimately denied the duress instruction for any of the charges, (*id.*, Page ID #1271–72), there was certainly room for reasoned debate on the issue. In fact, in 2020 the Michigan Supreme Court held that "duress may be asserted as an affirmative defense to felony murder if it is a defense to the underlying felony," thus showing that duress can apply to non-homicide aspects of a homicide case. *People v. Reichard*, 949 N.W.2d 64, 66 (Mich. 2020).

In any event, the duress issue in this case was corrected before the jury started deliberations. In his rebuttal closing argument, the prosecutor acknowledged that *everyone* was mistaken about the applicability of duress here:

> Now there are some issues that came up during the trial that the judge will instruct you on. And one of the things I want to make sure you understand is that *all of the attorneys in this case* at the very beginning of this case *and that includes the Judge*, made a legal mistake. And that was initially advising you that duress was part of this case. One of the things the Judge is going to tell you is that *all of us*, I,

15

> Mr. Lyons, Mr. Raduazo and the Judge himself mistakenly told you that duress was a defense in this case.
>
> It is not. It never has been. And the Judge is going to instruct you that you cannot consider duress as part of your – part of your discussions in this case. It is an invalid defense in the context of this case. . . .

(6/15/12 Trial Tr., R. 7-10, Page ID #1370 (emphasis added).)

The trial court also issued a correction in the final instructions: "Now at the beg – the beginning of this trial I gave you a preliminary instruction about the defense of duress. I now inform you and instruct you that instruction was inapplicable in the context of this case. You are not to consider duress in your deliberations in any form." (*Id.*, Page ID #1385.) Hence, again, the jury heard the ultimate correction from the *court*, without placing any blame explicitly or implicitly placed on Mercer's counsel in particular.

The full record, in context, shows that Mercer's counsel neither performed deficiently nor that Mercer suffered any actual prejudice such that there is any reasonable probability of a different outcome. And that is only under the *Strickland* standard; it does not even account for the additional deference owed under AEDPA. To establish that her counsel constitutionally erred under AEDPA, Mercer "must show that all reasonable judges would agree that all reasonable

16

attorneys would have performed differently than [hers]." *White*, 131 F.4th at 479. She cannot make that showing where every attorney, including the judge, initially held the mistaken belief that duress could apply in this case. As noted, Janish's counsel also agreed that duress could still apply to the conspiracy charge. This was not the type of mistake of law present in, say, *Lafler v. Cooper*, 566 U.S. 156, 161 (2012), where counsel baselessly advised the defendant that "the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist."

Mercer relies on *English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010), and *United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003), for the proposition that counsel is ineffective when he makes an unfulfilled promise to the jury in his opening statement. (3/14/25 Second Br. at 13–18.) However, circuit precedent "isn't enough to surpass AEDPA's relitigation bar." *Reed*, 134 F.4th at 464. Plus, *English* and *Hampton* are quite distinguishable. In those cases, defense counsel promised that certain evidence would be presented—evidence that was exclusively in counsel's control—and yet he failed to deliver. In this case, though, there was an innocent mistake of law shared by *all*

17

the players—*both* defense counsel for *each* defendant, the prosecutor, and the trial court. In *English* and *Hampton*, there was only one person to blame and thus only one person who risked losing credibility with the factfinder: defense counsel. That was not true here.

Further, even if *English* and *Hampton* are instructive, they speak only to the performance prong of *Strickland*, not prejudice. *See Thompson v. Rapelje*, 839 F.3d 481, 484 (6th Cir. 2016) (choosing not to evaluate performance under *English* or *Hampton* because there was no prejudice). The Michigan Court of Appeals reasonably determined that there was no reasonable probability of a different outcome absent the brief mentions of duress at the beginning of Mercer's trial. *Mercer*, 2014 WL 4262998, at *14–15. That was not only correct, but reasonable. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

The jury was instructed not to consider duress, which came on the heels of the prosecutor's rebuttal argument in which he claimed *collective* responsibility for the mistake. "[T]he court's instruction was ameliorative," as "[j]uries presumptively follow the law." *Thompson*,

18

839 F.3d at 485. The instruction "likely helped mitigate any damage arising from" the purported broken promise. *Id.*

In addition, Mercer's counsel did not touch on duress whatsoever in his closing argument. Counsel instead focused on the victims' threats to Mercer and Janish, that they were known for being violent (which the jury was told they could consider), and that Mercer was as much a victim in this case as Hannah and Thomas because of her drug use and, with Janish, trying to "scare" Hannah and Thomas. (6/15/12 Trial Tr., R. 7-10, Page ID #1349–52, 1355–57.) He also pressed that Mercer lacked the requisite *mens rea* for the charges, because she and Janish did not plan the murders. (*Id.*, Page ID #1357–58.) That is why counsel stressed the dangerousness of the victims—to show that Mercer and Janish's actions were reactive, not proactive. And, ultimately, counsel placed the blame squarely on Janish. (*Id.*, Page ID #1359.) It was therefore as if duress had never been mentioned days before, at the beginning of the trial, the last time the jurors had heard about it. On this record, there simply is no reasonable probability of a different outcome in the trial absent the brief mentions of duress.

19

Mercer claims that though counsel did not say the word "duress" in his closing, he still presented the general theme of duress and used language consistent with the defense to the point that it must have confused the jurors.  (3/14/25 Second Br. at 22–23.)  That is not the case. As the Michigan Court of Appeals noted, "counsel employed a viable defense strategy when he advanced the theory that defendant was not guilty of murder or conspiracy beyond a reasonable doubt."  *Mercer*, 2014 WL 4262998, at *14.  In other words, counsel attacked the elements of the charges, just as any good defense counsel would do, especially in light of the trial court's ruling that duress was not an available defense.  And even if the jurors were left wondering why counsel did not say "duress" in his closing, that was cleared up in the prosecutor's rebuttal and the trial court's final instructions.

Finally, whether duress was or was not discussed, and in whatever manner, it did not matter given the strength of the evidence in this case.  Mercer plainly shared criminal responsibility for the murders.  Mercer had an outstanding debt for the drugs she stole from Hannah and Thomas, and she told Janish the victims had threatened to shoot up their house, so Janish had Mercer invite them over so Janish

could at least "scare" them with a deadly weapon—a gun. (6/13/12 Trial Tr., R. 7-8, Page ID #1118–19.) Janish said that Mercer was "fully aware" of this. (6/14/12 Trial Tr., R. 7-9, Page ID #1206.) Janish retrieved the shotgun *before* the victims arrived and took it outside to meet Hannah, without any imminent threat. (*Id.*, Page ID #1202.) He then pointed the gun at Hannah and pulled the trigger. (*Id.*, Page ID #1203.) Janish said he thought the gun was unloaded, but it went off. (*Id.*) He could *not* make the same claim for Thomas, though. Before even approaching Thomas inside, Janish reloaded the shotgun. (*Id.*, Page ID #1204.) He then shot Thomas, as he had intended to do all along. (6/13/12 Trial Tr., R. 7-8, Page ID #1126.) For the reasons explained in the State's First Brief to this Court, Mercer did not have a colorable claim of self-defense or defense-of-others for the Thomas killing. The evidence spoke for itself, as the jury found in convicting Mercer of second-degree murder.

In sum, the district court faithfully applied AEDPA in denying this claim. As in *Thompson*, "[r]egardless of whether this panel would have made the same determination of no prejudice on direct appeal, the district court correctly concluded that the application of *Strickland*'s

21

prejudice prong by the Michigan Court of Appeals was reasonable." 839 F.3d at 485. Mercer fails to explain why the MCOA decision was *unreasonable* such that *every* fairminded jurist would be compelled to disagree with it. "The *general* [ineffective-assistance] principles that [Mercer] relies on do not inevitably lead to a *specific* answer in [her] case—certainly not an answer so clear that no fairminded jurist would agree with the [Michigan] courts." *Reed*, 134 F.4th at 464. This Court should affirm the denial of habeas relief on this claim.

22

II.  **The Michigan Court of Appeals reasonably determined that the prosecutor's brief misstatement of law in rebuttal closing argument did not render the entire trial fundamentally unfair, barring habeas relief.**

Mercer cannot prevail on her prosecutor-misconduct claim.  The Michigan Court of Appeals reasonably determined that while the prosecutor did misstate the hearsay rules, there was no prejudice, and it certainly did not infect the entire trial with unfairness as to violate due process.  Fairminded jurists could agree with that decision, especially under the exceedingly general standard for prosecutor misconduct and the leeway granted under AEDPA.

A.  **AEDPA insulates this claim because the Michigan Court of Appeals adjudicated it on the merits.**

The Michigan Court of Appeals rejected this claim on the merits as well, finding that while the prosecutor's statements were inappropriate, they did not deny Mercer a fair trial:

> Next, defendant argues that the prosecutor committed misconduct that denied her a fair trial when the prosecutor "misstated the law" during closing argument.
>
> "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." [*People v.*] *Dobek,* 274 Mich.App [58,] 63 [(2007)]. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. This Court will

23

not find error requiring reversal "where a curative instruction could have alleviated any prejudicial effect" of the statements. [*People v.*] *Unger,* 278 Mich.App [210,] 235 [(2008)] (quotation omitted). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements ... and jurors are presumed to follow their instructions." *Id.*

During rebuttal argument, the prosecutor stated as follows:

> [Y]ou've all heard about hearsay ... [T]here's a number of exceptions to the hearsay rule. [The exceptions are] based on the concept that if a defendant says something that hurts him it's inherently believable and therefore it's admissible ... If they say something that favors them it's inherently unbelievable and it's ... barred by hearsay.

Defense counsel objected, and the trial court instructed the jury that "[t]he hearsay rule is an extremely complicated rule of many parts." The prosecutor continued, arguing that defendant's theory that she intended to scare the victims was "inherently unbelievable ." The prosecutor argued that both Janish and defendant admitted to the contents of the phone call to Hannah, therefore it was "inherently believable" because it could be used against defendant.

The prosecutor acted inappropriately when he argued that admissions of a party opponent were "inherently believable." There is nothing in MRE 801(d)(2), (admission of a party opponent), that states that admissions are inherently believable and the prosecutor should not have attempted to explain to a lay jury the academic reasoning underlying the evidentiary rule. Nevertheless, the statement did not deny defendant a fair trial. The prosecutor's statements were isolated and the crux of the statements concerned the credibility of defendant and Janish's assertions that they intended to scare the victims. See *People v. Buckley,* 424

24

Mich. 1, 14–15; 378 NW2d 432 (1985) (a prosecutor may comment on a defendant's credibility).

Furthermore, the trial court provided sufficient instructions in this case. *Unger,* 278 Mich.App at 235. Specifically, the court instructed the jury that the hearsay rule was "extremely complicated" with "many parts," that the statements and arguments of the lawyers were not evidence that the jury was to determine what each piece of evidence means, that the jury was the only judge of the facts, and that the jury was to give defendants' statements "whatever weight you think the statements deserve." The trial court properly instructed the jury that it was the trier of fact and that the prosecutor's statement was not evidence and jurors are presumed to follow their instructions. *Id.* Defendant was not denied a fair trial.

*Mercer*, 2014 WL 4262998, at *15.

Because the state appellate court decided this claim on the merits, Mercer must meet the strictures of AEDPA. § 2254(d); *Richter*, 562 U.S. at 101. But she fails to show that *every* fairminded jurist would disagree with the Michigan Court of Appeals' decision, barring habeas relief on this claim. *Mays*, 592 U.S. at 392.

**B.    The Supreme Court has been clear that state courts have significant leeway in adjudicating prosecutor-misconduct claims under the high *Darden* standard, made higher still by AEDPA.**

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial error claim is the Supreme Court's decision in

25

*Darden v. Wainwright*, 477 U.S. 168 (1986). *See Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

A reviewing habeas court must ask whether the state court's decision denying the petitioner's prosecutorial misconduct claims " 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Parker*, 567 U.S. at 47 (quoting *Richter*, 562 U.S. at 103). "To constitute a denial of due process, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd v. Collins,* 209 F.3d 486, 529–30 (6th Cir. 2000) (cleaned up).

"Petitioner's burden on habeas review is quite a substantial one." *Id.* at 529. This court does "not possess supervisory powers over state

26

court trials." *Id.* "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* Thus, "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

The standard enunciated in *Darden* also constitutes a general rule, which entitles the state court to "more leeway" in reaching its determination. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[T]he state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). The petitioner must "clear *Darden*'s high bar, made higher still by AEDPA." *Stewart v. Trierweiler*, 867 F.3d 633, 639 (6th Cir. 2017).

27

**C.  Mercer fails to show that the Michigan Court of Appeals' merits adjudication was unreasonable under clearly established federal law, where the prosecutor's error did not infect the entire trial.**

Mercer condemns the prosecutor's arguments in his closing rebuttal that the hearsay rules permitted the jury to conclude that statements against a defendant's interest are inherently believable and, thus, that self-serving statements are inherently unbelievable.  While the Michigan Court of Appeals and the district court faulted the prosecutor for these misstatements, both nonetheless rightfully concluded that they did not so infect the trial with unfairness as to violate due process.  *Mercer*, 2014 WL 4262998, at *15; (4/25/22 Op. & Order, R. 36, Page ID #2174–75).  Both courts followed the Supreme Court's directive that the inquiry focuses on the fairness of the trial, not the culpability of the prosecutor.  *See Smith*, 455 U.S. at 219.

Indeed, the district court exercised proper restraint in this case in its application of AEDPA, in sharp contrast to its conclusions on the jury-instruction claim on which the court granted habeas relief.  The district court noted that while it "strongly disapprove[d] of the prosecutor's misstatement of Michigan law," and "may well have voted to grant relief" on Mercer's claim on direct appeal, the court could not

28

conclude, "under the especially deferential standard of review that applies here, that the Michigan Court of Appeals' rejection of the claim was unreasonable." (4/25/22 Op. & Order, R. 36, Page ID #2174–75.) The district court recognized that fairminded jurists could agree with the Michigan Court of Appeals' decision. (*Id.*, Page ID #2175.)

The Michigan Court of Appeals reasoned that the "prosecutor's statements were isolated" and the "crux" of them "concerned the credibility of defendant and Janish's assertions that they intended to scare the victims." *Mercer*, 2014 WL 4262998, at *15. The statements were, in fact, isolated, as they were confined to the prosecutor's rebuttal closing argument, and only a small part of it at that. (6/15/12 Trial Tr., R. 7-10, Page ID #1362–63, 1365, 1367.) The rebuttal spanned about twenty transcript pages, on which only three the prosecutor mentioned "inherent" believability; the prosecutor's initial closing spanned over thirty, with no such arguments. (*Id.*, Page ID #1288–1320, 1362–81.) And both closings came at the end of a five-day trial for two defendants. Thus, in the grand scheme, the isolated arguments were minimal. *See West v. Bell*, 550 F.3d 542, 566 (6th Cir. 2008) (finding prosecutor's statements in closing harmless where "there were eleven instances of

29

inappropriate comments," but "none were lengthy" where "the state's closing argument took up thirty pages of trial transcript.").

Mercer asserts that the prosecutor's mistaken statements were all the worse when combined with the duress defense being withdrawn and the lack of a defense-of-others instruction because they went to the "heart" of the matter, being the defendants' credibility. (3/14/25 Second Br. at 27.) But the district court addressed this argument, aptly explaining why "there is reason to believe that the prosecutor's misstatement of the law did not have the devastating effect that Mercer believes it had." (4/25/22 Op. & Order, R. 36, Page ID #2175.) "The prosecutor's misstatements were aimed at discrediting the exculpatory portions of the statements that Mercer and Janish gave to police investigators" that they did not plan the murders. (*Id.*) Those statements were vindicated, the district court reasoned, given that they were both acquitted of first-degree murder. (*Id.*) "Simply put, the jury's verdicts were, in large measure, *consistent* with the portions of the

30

statements by Mercer and Janish that the prosecutor sought to discredit through his misstatement of the law."[1] (*Id.*)

Mercer contests the district court's reliance on AEDPA deference to deny relief on this claim, submitting that what happened here was "a quintessential due process violation under *Donnelly* and *Darden, supra.*" (3/14/25 Second Br. at 28.) But Mercer makes a mistake that the district court did not. As Congress and the Supreme Court have made eminently clear, the question on habeas review is not simply whether there was a constitutional violation. Instead, the question is whether the state-court merits adjudication was so unreasonable under clearly established federal law that *every* fairminded jurist would disagree with it. *Mays*, 592 U.S. at 392. The district court prudently determined this was not such a case, and Mercer fails to explain how the state-court decision was not just wrong but unreasonable.

---

[1] Mercer was convicted of second-degree murder, not first-degree murder, for which she was sentenced to *parolable* life imprisonment. In Michigan, such offenders are eligible for parole as early as 15 years into their sentence if they committed the crime after October 1, 1992, which Mercer did. Mich. Comp. Laws § 791.234(7)(a); *see also Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004). Mercer has already served almost 13 years of her life sentence. (*See* 8/9/12 Sentencing Tr., R. 7-13, Page ID #1444.) This is substantially less than mandatory life without parole for first-degree murder. Mich. Comp. Laws § 750.316(1)(a).

Moreover, regardless of the correctness of the prosecutor's statements, Mercer cannot demonstrate that the statements rendered her entire trial unfair. *See Parker*, 567 U.S. at 45. To begin, Mercer's counsel objected as soon as the prosecutor connected inherent believability to the hearsay rules. (6/15/12 Trial Tr., R. 7-10, Page ID #1363.) The court did not rule on the objection, but it did acknowledge counsel's point that the "hearsay rule is an extremely complicated rule of many parts," lending at least some credence to the objection and signaling to the jury that what the prosecutor said perhaps should have been taken with a grain of salt. (*Id.*)

The jury instructions also cured any error. Jury instructions can nullify improper comments by a prosecutor. *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002). Instructions have been found to cure even a prosecutor error as egregious as shifting the burden of proof. *Wogenstahl v. Mitchell*, 668 F.3d 307, 333 (6th Cir. 2012). "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Here, the trial court instructed the jury that the attorneys' statements were not evidence and that it was solely the jury's job to "decide what the facts of this case are." (6/15/12 Trial Tr., R. 7-10, Page

32

ID #1384, 1386.)  This instruction mitigated Mercer's points about the centrality of Mercer's and Janish's credibility in their police statements. The trial court also instructed the jury that they should follow the law only as the court gave it to them and that if the attorneys said anything differently about the law, the jury should follow only the court's instructions.  (*Id.*, Page ID #1384.)

The court's instructions ameliorated the prosecutor's misstatements.  In *Darden*, the Supreme Court held that the prosecutor's comments in closing "did not deprive petitioner of a fair trial," in part because the trial court "instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."  477 U.S. at 180–81.  Similarly, in *Stewart*, this Court noted that the "curative instructions also leavened any risk of prejudice" from the prosecutor's closing argument.  867 F.3d at 639.

Lastly, as outlined above in Argument I(C), the evidence in this case strongly demonstrated Mercer's guilt in the murders of Hannah and Thomas.  The evidence spoke for itself and outweighed any misstatements by the prosecutor.  The jury was presumed to find the

33

facts per the trial court's instructions and, in doing so, they determined that Mercer was guilty of two second-degree murders.

The rules governing prosecutor misconduct, like those for ineffective assistance of counsel, are quite general. *Parker*, 567 U.S. at 48. Accordingly, Mercer faces the same problem with this claim as she did with her ineffective-assistance claim above, where "[t]he *general* [prosecutor-misconduct] principles that [Mercer] relies on do not inevitably lead to a *specific* answer in [her] case—certainly not an answer so clear that no fairminded jurist would agree with the [Michigan] courts." *Reed*, 134 F.4th at 464. Consequently, this Court should affirm the district court's denial of this claim.

34

## III. Mercer's defense of the habeas grant in this case only accentuates its numerous flaws.

There are myriad reasons why habeas relief should have been denied in this case, ranging from cognizability to the reasonableness of the factual determinations to the merits to harmlessness. All these buffers show just how difficult it *should* have been for the district court to grant habeas relief on Mercer's jury-instruction claim. The grant should be reversed.

### A. The absence of a self-defense (or defense-of-others) jury instruction is not a cognizable claim on habeas review.

Mercer advocates for the cognizability of this claim under *Mathews v. United States*, 485 U.S. 58, 63 (1988), and *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002). (3/14/25 Second Br. at 29–30.) But this Court has already distinguished *Mathews* and *Taylor* on the very principles for which Mercer cites them. In *Keahey v. Marquis*, 978 F.3d 474, 480 (6th Cir. 2020), this Court noted that *Taylor*'s language has been treated as "nonbinding dicta over, and over," and "that *Mathews* is not a constitutional case." 978 F.3d at 480–81 (cleaned up). Those cases therefore "don't do the work that [Mercer] needs them to do." *Reed*, 134 F.4th at 462.

35

Mercer later acknowledges *Keahey* but retorts, "Nevertheless, this issue is cognizable on habeas review under 28 U.S.C. § 2254(d)(2)." (3/14/25 Second Br. at 38–39.)  That puts the cart before the horse, however.  The claim must *first* be cognizable to *then* evaluate the claim under §§ 2254(d)(1) or (d)(2) to determine whether the petitioner is entitled to habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.").  *See also Turchin v. Clendenion*, No. 235129, 2023 WL 5181046, at *1 (6th Cir. June 14, 2023) ("Turchin's allegation that the state courts determined the facts unreasonably [on a non-cognizable claim] is not, by itself, a claim for habeas relief." (citing § 2254(d)(2)).

The linchpin of AEDPA is "custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In other words, the petitioner's claim must be cognizable; only if the petitioner meets that threshold requirement do the subsequent requirements engage, such as exhaustion under subsection (b) and merits review under subsection (d).  *See Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is

36

simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts.").

Mercer also resists the State's reliance on *Gilmore v. Taylor*, 508 U.S. 333 (1993). But it was this Court in *Keahey*, not the State in its own wisdom, that held *Gilmore* to its "reject[ion] [of] the argument that 'the right to present a defense includes the right to have the jury consider it' because 'such an expansive reading of our cases would make a nullity of the rule . . . that instructional errors of state law generally may not form the basis for federal habeas relief.' " *Keahey*, 978 F.3d at 479. Relying on *Gilmore*, this Court determined that "the Supreme Court has never clearly established Keahey's alleged constitutional right to a self-defense instruction . . . ." *Id.* So, too, for Mercer.

Consequently, the district court should have rejected this claim on cognizability alone. Instead, the court used out-of-circuit and even state cases to cobble together a right that neither this Court nor the Supreme Court has clearly established as constitutional. (4/25/22 Op. & Order, R. 36, Page ID #2132–34 ("Based upon this substantial body of federal and state case law, the Court is persuaded that Mercer's due process claim here . . . is a viable federal claim that is cognizable in these

37

proceedings.").) That, it could not do. *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (admonishing the circuit court for "canvass[ing] circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.").

The issue is quite simple: if the Supreme Court has not clearly announced the rule or right at issue, then habeas relief cannot be premised upon it. The Supreme Court has not clearly established a right to a self-defense (or defense-of-others) instruction. *Keahey*, 978 F.3d at 479. In fact, it has denounced such a rule. *Gilmore*, 508 U.S. at 344. Hence, habeas relief was improper.

**B.     Context shows that the Michigan Court of Appeals did not unreasonably determine the facts.**

Mercer's arguments for unreasonable factual findings under § 2254(d)(2), and thus for de novo review, continue to ignore the context of the Michigan Court of Appeals' "no evidence" findings. They bear repeating here:

1.     "there was *no evidence* **to support that Janish had a 'reasonable and honest belief'** that the use of deadly force against Thomas was necessary to prevent imminent death, great bodily harm, or sexual assault,"

38

2. "there was *no evidence* **that Janish had a reasonable belief** that Thomas was sexually assaulting defendant or about to cause her harm," and

3. "There was *no evidence* **that Janish acted out of fear** that defendant was in imminent danger."

*Mercer*, 2014 WL 4262998, at \*8 (emphasis added).

Each instance paired the lack of evidence with a *legal* conclusion in contravention of self-defense (or defense of others). The Michigan Court of Appeals concluded, based on the whole record, that Janish neither honestly (3) nor reasonably (1 and 2) believed his or Mercer's life to be in danger such that deadly force—a shotgun blast to the head—was necessary. *Mercer*, 2014 WL 4262998, at \*8. Those findings conformed to Michigan's self-defense law, where "the killing of another person in self-defense is justifiable homicide only if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v. Riddle*, 649 N.W.2d 30, 38 (Mich. 2002). The Michigan appellate courts have also been clear that "the touchstone of *any* claim of self-defense, as

39

a justification for homicide, is *necessity*," *Riddle*, 649 N.W.2d at 39, which the Michigan Court of Appeals determined was not met here.

Compare this case to a fresh decision from this Court, *Hodge v. Plappert*, ___ F.4th ___; 2025 WL 1324254 (6th Cir. May 7, 2025). There, the petitioner alleged that the Kentucky Supreme Court made an unreasonable factual determination under (d)(2) when it found "no credible evidence presented to support a conclusion that any jury tampering or misconduct occurred." *Hodge*, ___ F.4th at ___; 2025 WL 1324254, at *14 (cleaned up). The petitioner asserted that there *was* such evidence—testimony from a witness. *Id.* True, there was, but it was not reliable and, so, there was no (d)(2) violation. *Id.*

Mercer will likely counter that *Hodge* is distinguishable because the state court qualified its "no evidence" finding as "credible." But that would only harden the State's point. It would be quite contrary to AEDPA's respect for state-court decisions to allow a single word to part the sea of reasonableness. *See Rogers v. Mays*, 69 F.4th 381, 391–92 (6th Cir. 2023) ("[A]s the Supreme Court has repeatedly held, we may not flyspeck state-court opinions," since, "[a]fter all, AEDPA instructs us to look for 'a *decision*'—not a few words or a stray thought").

40

Indeed, this Court recently warned in another case that "[s]ection 2254(d) does *not* authorize us to uncharitably construe state court opinions." *Reed*, 134 F.4th at 465. Yet, that is precisely what the district court did. By plucking the "no evidence" findings from their proper context, the district court uncharitably construed the Michigan Court of Appeals' opinion, accusing the state appellate court of ignoring the evidence supporting a defense-of-others instruction. But the Michigan Court of Appeals was not at all ignorant of that evidence. For example, in the second instance, the court expressly acknowledged the supportive evidence but dismissed it on balance with the contrary evidence. The court explained, "Although Janish informed police that *he instructed Thomas to 'get off' defendant and to 'leave her alone,'* there was no evidence that Janish had a reasonable belief that Thomas was sexually assaulting defendant or about to cause her harm," because Thomas was not an intruder, as he was invited to the house only minutes before, and he arrived believing, given Mercer's invitation, that "he was going to have sex with defendant in exchange for the crack cocaine." *Mercer*, 2014 WL 4262998, at *8 (emphasis added).

41

The Michigan Court of Appeals' determinations fall under (d)(1), not (d)(2). "A trial court's decision about whether to provide a jury instruction is not the kind of fact-based determination subject to scrutiny under § 2254(d)(2)." *McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014). It ranks among similar "mixed" claims of fact and law, such as "whether a petitioner made a *Batson* prima facie showing of racial discrimination," and "whether a petitioner waived the state-law right to appeal," along with "the voluntariness of a confession, the effectiveness of counsel's assistance, and the 'in custody' determination for *Miranda* purposes." *Id.* (referring to *Batson v. Kentucky*, 476 U.S. 79 (1986), and *Miranda v. Arizona*, 384 U.S. 436 (1966)); *see also Bergman v. Howard*, 54 F.4th 950, 962 (6th Cir. 2022) (reaffirming that ineffective-assistance claims are "mixed" questions that fall under (d)(1), not (d)(2)).

And, as outlined in the State's First Brief, (d)(1) is unavailable in this case as well, precluding relief on this claim under either provision. *Keahey*, 978 F.3d at 479.

42

**C.   Regardless of the standard of review, the district court was wrong to find a constitutional violation from the lack of a defense-of-others instruction.**

Mercer fails to show that the defense-of-others instruction was constitutionally required.  Whether review falls under AEDPA or is de novo, and whether clearly established federal law as determined by the Supreme Court is required or not, the Constitution is the touchstone of habeas.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (noting that § 2254(d) "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it.").  "[E]ven when the AEDPA standard does not apply," and thus the claim is reviewed de novo, "a prisoner still must establish an entitlement to the relief he seeks."  *Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2005) (cleaned up) (citing § 2254(a)).

If review of Mercer's claim falls under AEDPA, as it should for all the reasons outlined in the State's First Brief, Mercer must show that the failure to instruct on defense of others was "so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates federal due process."  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).  She must then *additionally* show that the Michigan Court of Appeals' adjudication was beyond *any possibility* of

43

fairminded disagreement, such that *every* fairminded jurist would disagree with it. *Mays*, 592 U.S. at 391–92.

Mercer offers little argument on this front. She cursorily states that if she "has to meet this test, she has." (3/14/25 Second Br. at 42.) Why? "Both defendants' statements clearly support this instruction, not just Mercer's. Their statements, which both support that Mercer was being assaulted, were central to the trial." (*Id.*) Mercer does not address the elements of defense of others or show how Janish (and thus Mercer) met them and thereby required the instruction at trial.

Nor could she. Even if the instruction was merited under state law[2]—a point the State vehemently contests for all the reasons outlined in its First Brief—Mercer would still need to show that the absence of the instruction infected the entire trial with unfairness that it violated due process. *Rashad*, 675 F.3d at 569. That same standard applies

---

[2] The district court relied on Michigan's "some evidence" standard for determining that Mercer was entitled to a defense-of-others instruction. (4/25/22 Op. & Order, R. 36, Page ID #2136.) But any misapplication of the state standard is not within a habeas court's purview. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 71–72 (1991). "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (emphasis in original).

even on de novo review, as affirmed by the Second Circuit case upon which the district court relied. (4/25/22 Op. & Order, R. 36, Page ID #2135 (citing *Davis v. Strack*, 270 F.3d 111 (2d Cir. 2001), which rested on *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).) And under AEDPA deference, that standard is incredibly broad, thus giving the state courts significant leeway in adjudicating such claims. *Renico v. Lett,* 559 U.S. 766, 776 (2010). Notice that, either way, the inquiry ultimately resides in the Constitution.

The lack of instruction did not infect the entire trial. Mercer accused Thomas of attempted rape only in her first, dodgier police statement, not in her second, more forthcoming statement. (6/13/12 Trial Tr., R. 7-8, Page ID #1041, 1125–27.) She even said she was wearing lingerie and had her pants unbuttoned, intending to remove them, when she was with Thomas. (*Id.*, Page ID #1119–20.) Not to mention, Janish was ready to shoot Thomas regardless of his actions, considering that Janish reloaded the shotgun before even walking into the bedroom where Thomas and Mercer were located, and he had Mercer purchase the gasoline to burn the evidence *before* the victims

45

came over to the house.  (6/14/12 Trial Tr., R. 7-9, Page ID #1204, 1207–08.)  *Mercer*, 2014 WL 4262998, at *8.

On this evidence, it is entirely reasonable that there was no trial-wide infection of unfairness for Mercer to be convicted of second-degree murder.  The jury would have easily rejected a defense of others for the Thomas murder.  Habeas relief therefore was unwarranted.

### D.  The harmlessness of any instructional error in this case is readily discernible from the record.

Mercer's only argument against harmlessness under *Brecht v. Abrahamson*, 507 U.S. 619 (1993) is that "[t]here is no way for anyone to predict what effect the instruction would have had on the jury when it was not given at all," and, so, "[i]t is impossible to say whether a jury would have rejected it."  (3/14/25 Second Br. at 43–44.)  But that is an argument against harmless-error review in principle, not its specific application in this case.

Harmless-error review necessarily entails estimation and prediction.  It is no different than assessing prejudice in any number of contexts.  *See Brecht*, 507 U.S. at 637 (the harmless-error standard on habeas review requires proof of "actual prejudice." (cleaned up)).  For

46

instance, the Supreme Court has recognized that the prejudice assessment for an ineffective-assistance claim "will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Such predictive assessments are ingrained in our criminal-justice system. Even as of 1967, when the Supreme Court established the test for harmlessness beyond a reasonable doubt on direct review, "[a]ll 50 States ha[d] harmless-error statutes or rules," as did the federal government. *Chapman v. California*, 386 U.S. 18, 22 (1967).

It is true that *some* errors are incapable of such prediction that they are not subject to harmless-error review, dubbed "structural" errors. *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017) ("an error has been deemed structural if the effects of the error are simply too hard to measure."). "[M]ost constitutional errors can be harmless," however. *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991).

Instructional errors are not structural. For example, an instruction that omits an element of the offense "differs markedly from the constitutional violations we have found to defy harmless-error review." *Neder v. United States*, 527 U.S. 1, 8 (1999). In fact, this Court

47

has been clear that "*Brecht*'s harmless-error approach applies to situations (as here) where a criminal defendant challenges instructional errors on collateral review." *Nicholson v. United States*, 78 F.4th 870, 887 (6th Cir. 2023). The only type of instructional error that has been deemed structural is "a misdescription of the burden of proof," because that error "vitiates *all* the jury's findings." *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993). Otherwise, errors in the jury instructions are considered "trial error," which "occurs during the presentation of the case to the jury and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial." *Brecht*, 507 U.S. at 629 (cleaned up).

For the reasons outlined in the State's First Brief, it is not difficult to assess the effect of the absence of a defense-of-others instruction on the jury's verdict for Mercer for the Thomas murder. In brief sum, the jury would have rejected a defense of others because the evidence established that Janish was ready to kill Thomas *before* Janish entered the bedroom with Thomas and Mercer. Shortly before the murders, Jessica Campbell heard Janish and Mercer talking on speakerphone

48

about how to kill Hannah and Thomas, with the idea to kill them being Mercer's. (6/12/12 Trial Tr., R. 7-7, Page ID #873, 876.) Later, after killing Hannah in the driveway, when, as Janish claimed, the shotgun that he thought was unloaded went off when he pulled the trigger to "scare" Hannah, Janish *reloaded* the shotgun on his way to Thomas. (6/14/12 Trial Tr., R. 7-9, Page ID #1203–04.) Janish also asked Mercer to fill the gas can before Hannah and Thomas arrived at the house because, as Janish affirmed when the police asked him, he "knew ahead of time [he was] going out there to burn them . . . ." (*Id.*, Page ID #1208.) Janish (and therefore Mercer) was ready to kill, not defend.

In addition, the verdicts show that the jury assessed the evidence independently for Janish and Mercer, as they were required to do, finding that Mercer was more culpable than Janish. (6/15/12 Trial Tr., R. 7-10, Page ID #1399 ("Each defendant in this case is entitled to have his or her guilt or innocence decided individually.").) The jury did not convict them equally: the jury convicted Janish of voluntary manslaughter for Hannah and second-degree murder for Thomas but convicted Mercer of second-degree murder for *both* victims. This, even though the jury received manslaughter instructions for both defendants

49

for both victims. (*Id.*, Page ID #1398–99.) Both defendants also received a self-defense instruction for the Hannah murder, yet the jury mitigated to manslaughter only for Janish. (*Id.*, Page ID #1400.)

In the end, the jury compromised for Janish but *not* for Mercer. That informs how they would have treated a defense-of-others instruction as well. Is it conclusive? No, but it is a strong indicator. Accordingly, there was no substantial and injurious effect on the verdict under *Brecht*.

For all these reasons, the habeas grant should be reversed.

50

**IV. The district court properly exercised its discretion in tailoring the habeas remedy to the only conviction on which habeas relief was granted rather than extending the remedy to the sentence of the undisturbed conviction.**

After the district court ruled that Mercer would be entitled to habeas relief on her jury-instruction claim for the Thomas murder, another two years of litigation on the proper remedy ensued. At its conclusion, the district court agreed with the State that the remedy should be tailored to only the Thomas murder (on which habeas relief had been granted) and should not extend to the sentence on the Hannah murder (which was affirmed in all respects). That decision did not fall outside the district court's broad discretion to craft a habeas remedy.[3]

**A. Districts courts possess wide discretion in crafting habeas remedies.**

This Court "review[s] a district court's choice of a habeas remedy for abuse of discretion." *Morrell v. Wardens*, 12 F.4th 626, 630 (6th Cir. 2021). An abuse of discretion occurs when the reviewing court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (cleaned up).

---

[3] Of course, any defense of the remedy assumes that the habeas grant was valid, which, as argued above, it was not.

51

The standard is abuse of discretion because "Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *accord Ewing v. Horton*, 914 F.3d 1027, 1032 (6th Cir. 2019) ("Courts typically have broad discretion in fashioning habeas relief"). The breadth of the discretion emanates from AEDPA, which requires federal courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

This broad discretion is hemmed in by one consideration, however. "[T]he relief granted must be tailored to cure the constitutional injury without unnecessarily infringing on competing interests of comity, federalism, and finality." *Ewing*, 914 F.3d at 1032–33. Those interests are key under AEDPA, as "[t]he entire habeas regime as it exists today reflects the deference and respect owed to state courts as part of this delicate balance," because "Federal habeas review intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 1033 (cleaned up). The chosen remedy should, " 'as much as possible restore[ ] the [petitioner] to the circumstances that

would have existed had there been no constitutional error.'" *Id.* (quoting *United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000)).

At bottom, the "remedy must neutralize the taint of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler*, 566 U.S. at 170 (cleaned up).

### B.    The district court did not abuse its discretion in devising a narrowed habeas remedy in this case.

Mercer contends that the justice component of § 2243 required the district court's grant of habeas relief on the Thomas murder to extend the remedy to the Hannah sentence as well, and that the failure to do so was an abuse of discretion. (3/14/25 Second Br. at 44.) She has it backwards. It would have been an abuse of discretion for the district court to *extend* the habeas remedy from the grant conviction to the sentence on the *other*, undisturbed conviction. By instead tailoring the remedy to the conviction on which habeas relief was granted—and only that conviction—the district court properly exercised its discretion.

53

The habeas grant in this case rested on a narrow finding: that the jury should have received a defense-of-others instruction for the Thomas murder. (4/25/22 Op. & Order, R. 36, Page ID #2079, 2185.) The district court explicitly denied all of Mercer's habeas claims related to the Hannah murder. (*Id.*, Page ID #2080, 2185.) Thus, the constitutional infirmity in need of correcting, according to the district court, was due process for the Thomas murder. The remedy therefore had to be tailored to *that* violation. *Ewing*, 914 F.3d at 1032–33. Granting relief on the Hannah sentence would "skip [a] step" and "cure a constitutional violation that has not been shown to exist." *Id.* at 1033.

In other words, granting relief on the Hannah sentence would have gone too far. "Short-circuiting the remedial process in this way risks offending principles of federalism and comity that govern federal habeas review of state court convictions." *Id.* Whether the sentence for the Hannah murder is affected by the vacatur of the conviction for the Thomas murder is a question for the state courts to answer, if or when that time comes. This Court has acknowledged that even if habeas relief is appropriate, the specific form that the relief must take in terms of "resentencing is for the [state courts] to address and we leave

54

resolution of the state question for them." *DePew v. Anderson*, 311 F.3d 742, 754 (6th Cir. 2002). This strikes the coveted balance habeas law seeks to achieve between the federal and state courts. If the habeas grant on the Thomas murder is ultimately upheld, the case will return to the state courts for resolution, whether retrial, plea, or resentencing. Mercer will then be "free to seek habeas relief if [s]he finds the State's process constitutionally inadequate." *Ewing*, 914 F.3d at 1033.

It is well within a district court's right to limit review or relief when there is discretion to do so. Consider the concurrent sentencing doctrine, under which "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). So long as there is no possibility of adverse collateral consequences, federal courts may decline review of such convictions. *Groves v. Meko*, 516 F. App'x 507, 508 (6th Cir. 2013). And because "those [adverse collateral] consequences are most salient on direct appeal, not on a collateral challenge," the doctrine and its attendant discretion is all the more germane on habeas review. *Buffin*

55

*v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013).  Indeed, district courts continue to apply it.  *See, e.g.*, *Wright v. Schiebner*, No. 1:23-cv-472, 2024 WL 5153098, at *2–5 (W.D. Mich. Dec. 18, 2024).[4]

In fact, the Supreme Court and this Court have held that "[e]ven if a petitioner can prove that habeas relief is warranted as a matter of law, courts may nevertheless deny habeas through the exercise of their equitable discretion."  *White*, 131 F.4th at 479 (citing *Brown v. Davenport*, 596 U.S. 118, 134 (2022)).  Thus, if judicial discretion on habeas review is so broad that a federal court can deny relief altogether even if it is legally warranted, then surely there is at least as much discretion in narrowing the remedy to the only constitutional violation on which relief was granted.  Understanding the breadth of that discretion as applied in this case, the district court could not have abused it in tailoring the remedy to the only constitutional injury—the lack of a jury instruction on defense of others for the Thomas murder—

---

[4] For clarity, the State does not advocate for application of the concurrent sentencing doctrine in this case based on Mercer's remaining life sentence for the Hannah murder.  The doctrine is included here only as an example of the discretion federal courts wield in habeas cases.

"without unnecessarily infringing on competing interests of comity, federalism, and finality." *Ewing*, 914 F.3d at 1032–33.

Just look at *Morrell*. There the remedy could have taken two forms: full resentencing or a hearing to determine if advisory sentencing guidelines would have made a material difference in the judge's exercise of sentencing discretion. *Id.* at 631. The State advocated for the latter because it was the remedy devised by the Michigan Supreme Court, but the district court imposed the former. *Id.* This Court held that the federal courts are not bound by how the state courts would correct a constitutional infirmity if there is more than one way to do so. *Id.* at 633–34. So, the district court did not abuse its discretion. *Id.* at 634.

If it was not an abuse of discretion for the district court in *Morrell* to choose a remedy other than the one the state courts would have applied, then it was not an abuse of discretion for the district court in this case to do so either. In both cases, the parties advocated for a remedy consistent with what they believed the state courts would have done. This Court in *Morrell* held that the district courts need not operate in that fashion and should so hold here. It is not an abuse of discretion to not receive one's "preferred remedy." *Id.* at 633.

Mercer's reliance on federal "sentencing package" cases on direct appeal are unhelpful.  (3/14/25 Second Br. at 50–52.)  Those cases essentially state that if one of many convictions is undermined, the federal courts can remand for resentencing on all the related convictions.  But those cases only reinforce the *permissive* nature of such remedies.  *See, e.g.*, *Troiano v. United States*, 918 F.3d 1082, 1087 (9th Cir. 2019) (holding that the decision to "unbundle" a sentencing-package case "rests within the sound discretion of the district court").

Mercer further avers that reversal of one conviction in a two-conviction case in Michigan would have resulted in resentencing.  She cites two bases for these contentions.  Neither carries the day.

First, she argues that the score for Offense Variable (OV) 9, number of victims, would have been reduced commensurate with the reduction of the homicide convictions from two to one.  (3/14/25 Second Br. at 49–50.)  Not necessarily.  In scoring OV 9, the sentencing court must count "each person who was placed in danger of physical injury or loss of life or property" as a "victim."  Mich. Comp. Laws § 777.39(2)(a).  Consistent with this definition, a defendant need not "commit more than one offense for there to be more than one victim."  *People v.*

58

*Sargent*, 750 N.W.2d 161, 164 n.2 (Mich. 2008). The 100-point score Mercer received for OV 9 is warranted when "[m]ultiple deaths occurred." Mich. Comp. Laws § 777.39(1)(a). Multiple deaths occurred here. Regardless of the number of Mercer's *convictions*, the number of *victims* would remain the same: two people died. Indeed, Mercer expressed remorse and responsibility for *both* deaths at sentencing, where she stated to both victims' families how "sincerely sorry I am for *my choices* that *led to the deaths of your family members*." (8/9/12 Sentencing Tr., R. 7-13, Page ID #1432 (emphasis added).)

Second, Mercer points to *People v. Brown*, 984 N.W.2d 486 (Mich. Ct. App. 2021) for the proposition that a sentence cannot rest on a conviction invalidated by self-defense. (3/14/25 Second Br. at 49.) But *Brown* was decided under a very specific circumstance: when the defendant is *acquitted* due to self-defense. 984 N.W.2d at 491, 494. This carries significance under Michigan law because in 2019 the Michigan Supreme Court held that defendants cannot be sentenced based on acquitted conduct. *People v. Beck*, 939 N.W.2d 213, 227 (Mich. 2019). But Mercer does not stand acquitted of the Thomas murder; she has only been granted legal relief from that conviction, for which she is

59

subject to retrial.  What is more, even if *state* law precludes consideration of acquitted conduct in sentencing, *federal* law does not. *United States v. Watts*, 519 U.S. 148, 157 (1997).

But all that is beside the point.  The crux of *Morrell* was that regardless of how the state courts would choose to remedy a constitutional violation, a federal district court is not required to do the same.  So long as several remedies are permitted, the district court may choose among them.  *Morrell*, 12 F.4th at 632.

Mercer's final plea is unavailing as well.  She contends that the district court should have issued a conditional writ to require resentencing on the Hannah murder if she is later acquitted of the Thomas murder upon retrial.  (3/14/25 Second Br. at 52–53.)  In support, she cites *United States v. Tucker*, 404 U.S. 443 (1972), which ordered resentencing because the petitioner had been sentenced using prior convictions in which the defendant lacked counsel, in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963).  404 U.S. at 447–49.  *Tucker* would be problematic here if, like in that case, the Thomas conviction had been invalidated and the sentencing court relied on it anyway at Mercer's original sentencing.  But Mercer seeks to use *Tucker* in a novel

60

way in this case, asking for a conditional writ for resentencing where the habeas grant itself is what "invalidated" the conviction on which the sentencing court earlier relied. She does not cite any cases applying *Tucker* in that manner. It could not have been an abuse of discretion for the district court to decline to break new ground in that respect.

Plus, a conditional writ would be entirely premature at this juncture, as any conclusive invalidation of the Thomas conviction is at best years away between subsequent habeas and state proceedings. The district court instead trusted the state courts to revisit the Hannah sentence if the Thomas conviction remains invalid or Mercer is acquitted at retrial. (8/7/24 Op. & Order, R. 56, Page ID #2409–10.) That decision was well within the court's professional judgment.

In all, the district court properly exercised its discretion in tailoring the habeas remedy to the only conviction it found constitutionally infirm. If the habeas grant is affirmed, the remedy should be as well.[5]

---

[5] The State notes that while the district court granted a fourth certificate of appealability on a sentencing claim, (4/25/22 Op. & Order, R. 36, Page ID #2186), the Federal Defenders have kindly informed undersigned counsel that Mercer elects not to appeal that claim. Accordingly, neither party will brief that issue.

## CONCLUSION AND RELIEF REQUESTED

The State respectfully requests that this Honorable Court reverse the district court's conditional grant of habeas relief on Mercer's jury-instruction claim and affirm the denial of habeas relief on her ineffective-assistance, prosecutor-misconduct, and habeas-remedy claims.

Respectfully submitted,

Dana Nessel
Michigan Attorney General

Ann M. Sherman (P67762)
Solicitor General

/s/ Scott R. Shimkus
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing MI  48909
517-335-7650
shimkuss@michigan.gov

Dated:  May 14, 2025

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 12,546 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 365 in 14-point Century Schoolbook.

<u>/s/ Scott R. Shimkus</u>
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing MI  48909
517-335-7650
shimkuss@michigan.gov

63

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

/s/ Scott R. Shimkus
Assistant Attorney General
Co-Counsel of Record
Attorneys for Respondent-
Appellant/Cross-Appellee
Criminal Appellate and Parole
Appeals Division
P.O. Box 30217
Lansing MI  48909
517-335-7650
shimkuss@michigan.gov

64

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Respondent-Appellant/Cross-Appellee, per Sixth Circuit Rule

28(a), 28(a)(1)-(2), 30(b), hereby designates the following portions of the

record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| 06-11-2012 Trial Transcript | 10-05-2016 | R. 7-6 | 479 - 692 |
| 06-12-2012 Trial Transcript | 10-05-2016 | R. 7-7 | 693 - 908 |
| 06-13-2012 Trial Transcript | 10-05-2016 | R. 7-8 | 909 - 1195 |
| 06-14-2012 Trial Transcript | 10-05-2016 | R. 7-9 | 1196 - 1284 |
| 06-15-2012 Trial Transcript | 10-05-2016 | R. 7-10 | 1285 - 1415 |
| 08-09-2012 Sentencing Transcript | 10-05-2016 | R. 7-13 | 1422 - 1446 |
| Opinion and Order | 04/25/2022 | R. 36 | 2077- 2187 |
| Opinion and Order | 08-07-2024 | R. 56 | 2399 - 2415 |

2016-0137340-B/USCAAppellantBrief/Mercer.Barbara